(Nos. 74910, 75577 cons.—

JOSEPH RADAZEWSKI *et al.*, Petitioners, v. HONORABLE THOMAS P. CAWLEY, Judge of the Circuit Court of Cook County, *et al.*, Respondents.

*Opinion filed March 31, 1994.*

Mark J. Heyrman, of Chicago (Brian D. Bossert and Marc D. Kirshbaum, law students), for petitioners.

Roland W. Burris, Attorney General, of Springfield (Terence M. Madsen, Assistant Attorney General, of Chicago, of counsel), Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Janet Powers Doyle and Theodore F. Burtzos, Assistant State's Attorneys, of counsel), and James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, of counsel), for respondents Hon. Thomas P. Cawley, Hon. Edmund Bart, and Hon. Barbara J. Disko.

JUSTICE NICKELS delivered the opinion of the court:

We have consolidated in this proceeding four petitions for writ of *mandamus*, brought pursuant to Supreme Court Rule 381 (134 Ill. 2d R. 381). Petitioners, Joseph Radazewski, Hosie Williams, Larry Murray, and James Infanto, were insanity acquittees confined to mental health care facilities at the time each filed for *mandamus*. Petitioners had each requested a hearing from respondents, who are circuit court judges, to determine whether they are entitled to release from these facilities. In this consolidated *mandamus* proceeding, petitioners allege that respondent judges have failed to grant them timely hearings and ask us to compel respondents to do so.

## I. Background

Before addressing the petitions, we note that, after the individual petitions for *mandamus* were consoli-

dated, petitioner Infanto withdrew his petition for release and was dismissed from this proceeding. Therefore, we do not consider his petition any further.

The facts are essentially the same for the remaining three petitioners. Each petitioner was charged with a felony and found not guilty by reason of insanity. Each was then placed in the custody of the Department of Mental Health and Developmental Disabilities and involuntarily admitted to a mental health care facility, pursuant to section 5—2—4 of the Unified Code of Corrections (730 ILCS 5/5—2—4 (West 1992)). While at these mental health care facilities, petitioners each sent petitions requesting release to the clerk of the court, the State's Attorney, and the judge who found them subject to involuntary admission.

In the petitions, petitioners requested the appointment of counsel (see 730 ILCS 5/5—2—4(c) (West 1992)), the scheduling of an impartial examination by a psychiatrist or a clinical psychologist (see 730 ILCS 5/5—2—4(f) (West 1992)), and a hearing within 30 days of receipt of the petitions to determine whether they should be released (730 ILCS 5/5—2—4(e) (West 1992)). Section 5—2—4(e) provides:

> "A defendant admitted pursuant to this Section, or any person on his behalf, may file a petition for *** discharge or conditional release under the standards of this Section in the court which rendered the verdict. Upon receipt of a petition ***, *the court shall set a hearing to be held within 30 days.* Thereafter, no new petition may be filed for 60 days without leave of the court." (Emphasis added.) (730 ILCS 5/5—2—4(e) (West 1992).)

Petitioners filed their *mandamus* actions in this court when they did not receive the requested hearings within the statutory 30-day period.

Initially, we note that, since filing for writs of *mandamus*, petitioners have received the hearings they requested, or had one scheduled, even though the

hearings have not been held within the designated 30-day period. Respondent Judge Cawley received Williams' petition for release in November 1992; Judge Cawley conducted a hearing in March 1993. Respondent Judge Bart received Murray's petitions in November 1990, February 1992, and January 1993; a release hearing was conducted in January 1994, before a judge other than Judge Bart. Respondent Judge Disko received Radazewski's petition for a release hearing in November 1992. Radazewski's case has since been reassigned to a different judge, and a hearing is scheduled for April 1994.

Accordingly, petitioners have each received the relief they request in this consolidated action for *mandamus*, the scheduling of a hearing on their release petitions. We will not compel circuit court judges to do something that has already been done. Thus, the writs of *mandamus* must be denied. Ordinarily, when "events occur which make it impossible for the court to grant effectual relief," an issue becomes moot. *Dixon v. Chicago & North Western Transportation Co.* (1992), 151 Ill. 2d 108, 116.

This court, however, will examine an issue that would otherwise be moot if the issue fits an exception to the mootness doctrine. (*In re A Minor* (1989), 127 Ill. 2d 247, 257.) We find that this action fits the public interest exception to the mootness doctrine. The criteria for applying this exception include: "(1) the public nature of the question, (2) the desirability of an authoritative determination for the purpose of guiding public officers, and (3) the likelihood that the question will generally recur." (*In re A Minor*, 127 Ill. 2d at 257.) The liberty interest of insanity acquittees in seeking a prompt hearing is clearly of public concern. (See *Foucha v. Louisiana* (1992), 504 U.S. 71, 118 L. Ed. 2d 437, 112 S. Ct. 1780.) In addition, circuit court judges are not

uniform in their approach to scheduling release hearings and need guidance. Finally, the issue is likely to recur because the statute allows insanity acquittees to file new release petitions periodically. We therefore address the merits. The sole issue we consider is whether the statute requires circuit court judges to conduct hearings within 30 days of receiving release petitions.

## II. Statutory Time Limitation

Petitioners argue that the 30-day provision in the statute is mandatory and gives circuit court judges no discretion. They contend that the plain language of the statute requires that judges conduct hearings within 30 days. We agree.

In reaching our conclusion, we first examine the language of the statute. Section 5—2—4(e) states that "the court *shall* set a hearing to be held within 30 days." (Emphasis added.) (730 ILCS 5/5—2—4(e) (West 1992).) Generally, the use of the word "shall" indicates that a time limitation is mandatory, but this is not always the case. (*People v. Flores* (1984), 104 Ill. 2d 40, 47.) This court stated the approach for determining whether a time limitation is mandatory in *Carrigan v. Illinois Liquor Control Comm'n* (1960), 19 Ill. 2d 230:

> "The problem is one of statutory construction. In determining the intent of the legislature consideration must be given to the entire statute, its nature, objects and the consequences which would result from construing it one way or another. [Citations.] Ordinarily a statute which specifies the time for the performance of an official duty will be considered directory only where the rights of the parties cannot be injuriously affected by failure to act within the time indicated. However, where such statute contains negative words, denying the exercise of the power after the time named, or where a disregard of its provisions would injuriously affect public interests or private rights, it is not directory but mandatory. [Citations.]" (*Carrigan*, 19 Ill. 2d at 233.)

To construe the statute as directory, we would have to find that the rights of insanity acquittees could not be injuriously affected by the failure of circuit court judges to act within the time indicated. We cannot do so.

It is well settled that detention of an individual at a mental health care facility implicates a substantial liberty interest. (See *Foucha v. Louisiana* (1992), 504 U.S. 71, 118 L. Ed. 2d 437, 112 S. Ct. 1780; *Jones v. United States* (1983), 463 U.S. 354, 77 L. Ed. 2d 694, 103 S. Ct. 3043; *In re Robinson* (1992), 151 Ill. 2d 126; *In re Splett* (1991), 143 Ill. 2d 225; *People v. Lang* (1986), 113 Ill. 2d 407; *In re Stephenson* (1977), 67 Ill. 2d 544.) Statutes involving involuntary admission procedures are therefore construed narrowly unless such a construction would require "the performance of an empty formality." (*In re Splett*, 143 Ill. 2d at 232; see also *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 507.) Section 5—2—4(e) assures insanity acquittees that they may seek a prompt hearing from the circuit court to determine whether they are entitled to release. A hearing to vindicate the liberty interest of insanity acquittees is not an empty formality.

In addition, if the statute were not mandatory, it would be unclear as to how much of a delay in scheduling is required before an insanity acquittee's liberty interest is violated. An insanity acquittee might have to wait a considerable time before a judge's failure to set a hearing becomes flagrant enough to warrant action. The substantial delays experienced by these insanity acquittees in receiving their hearings illustrate this problem. Petitioner Radazewski has now had a release hearing scheduled, nearly $1^1/_2$ years after sending his petition to Judge Disko. Petitioner Murray received a hearing after sending Judge Bart three release petitions over the course of three years.

We acknowledge that our holding imposes a burden

on circuit court judges. A mandatory interpretation limits the amount of control a circuit court judge exercises over his docket. We find, however, that the burden imposed on circuit court judges is outweighed by the potential harm insanity acquittees suffer in being denied prompt hearings on their release petitions. Furthermore, the legislature is free to amend the statute to extend the time within which hearings are to be held to reflect a more realistic time period.

Respondent Judge Cawley argues that finding the statute mandatory does not give defense counsel enough time to adequately prepare for the release hearing. In finding the statute mandatory, we do not suggest that a circuit court judge must force defense counsel to proceed with a hearing when counsel is unprepared. (See *People v. Rotuno* (1987), 156 Ill. App. 3d 989 (circuit court should have granted counsel's request for continuance to allow counsel to adequately prepare for hearing involving involuntary admission).) Thus, if an insanity acquittee requests a continuance, or otherwise contributes to the delay in scheduling, the 30-day period is tolled.

Respondent Judge Bart raises an additional argument regarding his duty to schedule a release hearing. He contends that petitioner Murray filed his petitions for release under the wrong case number. According to Judge Bart, Murray was found not guilty by reason of insanity in a felony case and in two misdemeanor cases. The felony trial was conducted before Judge Nolan while the misdemeanor cases were heard by Judge Bart. Both judges placed Murray in the custody of the Department of Mental Health and Developmental Disabilities. At the time Murray filed his release petitions, Judge Bart's involuntary admission order had expired and the misdemeanor cases had been dismissed. Thus, Judge Bart argues that Murray should have filed the release petitions under the felony case number.

Generally, a petition must be filed under the correct case number, so that it may be properly handled. At the time Murray filed his petitions for release, Judge Nolan, or his successor, retained jurisdiction over Murray. (*People v. Roush* (1984), 101 Ill. 2d 355, 363-64.) Thus, we agree with the trial judge that Murray should have filed his release petitions under the felony case number. Although we accept the trial judge's argument, we are unimpressed with his conduct in this matter. Murray sent three petitions to the trial judge over the course of three years, but the trial judge does not suggest that he forwarded any of Murray's petitions to the chief judge of the circuit court or notified either Murray or the clerk of the court of the error. None of these actions would have caused the trial judge any great inconvenience, and common sense and decency dictate that the trial judge had a responsibility to at least see that the release petitions were properly forwarded.

Petitioners raise several additional arguments regarding the constitutionality of respondents' actions in denying them prompt release hearings. Given our holding that the 30-day provision in the statute is mandatory, we do not address these constitutional arguments. Because the petitioners have already received the hearings they now request, or, in the case of petitioner Radazewski, has a hearing scheduled, the writs of *mandamus* are denied.

*Writs denied.*