THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEN-·NETH MARSHALL, Defendant-Appellant.

First District (3rd Division)    No. 1—94—2048

Opinion filed June 30, 1995.

Rita A. Fry, Public Defender, of Chicago (Robert C. Drizin, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Alan J. Spellberg, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

This is an appeal of a denial of a petition for writ of *habeas corpus* by defendant, Kenneth Marshall. On appeal, defendant asserts that the trial court erred in denying his petition for writ of *habeas corpus* because it had lost jurisdiction over him when his conditional release period expired pursuant to section 5—2—4(h) of the Unified Code of Corrections. Ill. Rev. Stat. 1987, ch. 38, par. 1005—2—4(h) (now 730 ILCS 5/5—2—4(h) (West 1992)).

Following a bench trial on September 21, 1984, defendant was found not guilty by reason of insanity (NGRI) of murder, armed violence, and aggravated battery. On December 11, 1984, the trial court found that defendant was subject to involuntary admission and placed him in the care and custody of the Department of Mental Health and Developmental Disabilities (Department of Mental Health or Department) for a period not to extend past February 29, 2003, which was defendant's *Thiem* date (see *People v. Thiem* (1980), 82 Ill. App. 3d 956, 962, 403 N.E.2d 647), which is the maximum time defendant can be involuntarily committed under the NGRI statute.

On November 15, 1988, defendant was granted conditional release from the Elgin Mental Health Center pursuant to section 5—2—4(h) of the Unified Code of Corrections. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—2—4(h) (now 730 ILCS 5/5—2—4(h) (West 1992)).) The conditions of the release were that defendant (1) be released to a residential 30-day program for substance abusers; (2) upon completion of that program, live with his mother and stepfather; and (3) attend the Springfield Mental Health Clinic on an outpatient basis for monitoring of his neuroleptic medication and counseling for his emotional needs and adjustment to the community.

On November 15, 1993, defendant's conditional release expired because no petition had been filed seeking an extension. On December 3, 1993, defendant was discharged following a three-week stay in the University of Chicago Hospital psychiatric unit where he was voluntarily admitted because he was hearing voices that told him to hurt himself and others. That same day, defendant requested assistance from the Department of Mental Health. Pursuant to the Department of Mental Health's request, the trial court ordered that defendant be admitted for evaluation.

On January 11, 1994, the Elgin Mental Health Center sent an evaluation report to the trial court. The report, which was prepared by Dr. Hargurmukh Singh, a clinical psychiatrist, and Tim Sweeney,

the psychologist administrator, stated that during defendant's conditional release, he had been admitted to McFarland Mental Health Center in Springfield approximately five times. Since moving to Chicago in mid-1993, defendant had been hospitalized twice at Hargrove Hospital, once at another private psychiatric hospital in Chicago, and once at the University of Chicago Hospital.

Defendant was diagnosed as a chronic paranoid schizophrenic with an antisocial personality disorder and a history of psychoactive substance abuse. Defendant had been previously prescribed neuroleptic drugs to modify his behavior. When he took his medication, he was usually stable, but when he did not, he was a threat to himself and others after hearing voices. According to the report, defendant had a history of noncompliance with his medication.

The report further stated that defendant was "guarded, evasive and not very cooperative." Although he did not express any delusional, homicidal, or suicidal thoughts, he admitted hearing voices that told him to hurt other people. Based on their evaluation, Dr. Singh and Mr. Sweeney concluded that defendant was a danger to himself and others and was in need of mental health treatment on an inpatient basis in order to stabilize his medication and resolve chemical dependency issues. However, the report also stated that defendant was not subject to involuntary admission.

On February 7, 1994, the trial court ordered the case off the call after both the State and defense attorney agreed that the trial court no longer had jurisdiction over defendant since his conditional release period had expired. However, the State requested that the case be re-docketed. At a February 16, 1994, court hearing, the State argued that the trial court retained jurisdiction until defendant's *Thiem* date. The trial court ordered a behavioral examination of defendant and then indicated that he would be recusing himself from the case because his wife was involved in defendant's treatment at the Department of Mental Health. On February 17, 1994, defendant's case was transferred to another trial judge, who continued the matter for a hearing on defendant's petition for writ of *habeas corpus*.

On March 11, 1994, a hearing was held at which defense counsel made a special appearance for the purpose of contesting the trial court's jurisdiction. Following arguments by the State and defense counsel, the trial court found that under the controlling doctrine of *People v. Butler* (1990), 194 Ill. App. 3d 297, 550 N.E.2d 1250, the trial court's jurisdiction did not automatically terminate upon the expiration of the conditional release period.

After denying defendant's *habeas corpus* petition on March 18, 1994, the trial court held a hearing on defendant's mental health

status. During that hearing, Dr. Singh testified as an expert in forensic psychiatry. In December 1993, Dr. Singh had conducted a psychiatric evaluation of defendant, which entailed interviewing defendant, reviewing his records, and discussing his case with other members of the treatment team, including a social worker, a counselor, a psychologist, and various nurses. Based on his evaluation, Dr. Singh believed that defendant had a likelihood of causing danger or harm to himself and others and was in need of inpatient mental health services. He explained that although he originally did not believe that defendant was subject to involuntary admission and recommended against it in his written report, defendant's condition had deteriorated and he was now subject to involuntary admission and required placement in a secure setting. Moreover, Dr. Singh indicated that he did not understand the difference between inpatient care and involuntary admission.

Dr. Singh further testified that defendant suffered from chronic schizophrenia and was being treated with an injectable anti-psychotic medication to help stabilize his condition. However, defendant's condition was not fully stabilized. He was still hearing voices although he would not disclose what those voices were saying. Dr. Singh's recommendation for defendant was psychotropic medications, therapeutic activities, ongoing counseling, and supportive therapy. Dr. Singh indicated that once defendant's condition is fully stabilized through the use of anti-psychotic and mood-altering medication, the treatment team would reevaluate defendant for his eventual discharge into a structured group home.

Defendant then testified that he no longer was hearing voices even though he had voluntarily gone to the Elgin Mental Health Center in December 1993 because he was hearing voices. He stated that he thought the medication he was taking was fine, but he did not want to take additional medications. He testified that he had the right to refuse more medication than he was already taking. He admitted that he heard voices that told him to commit suicide when he was not taking his medication. Defendant expressed a desire to live with his father until he could get his own apartment and he stated that he had been off nonprescription drugs for nine months.

After the parties rested, the State requested that defendant be admitted to Elgin Mental Health Center on an inpatient basis and defense counsel suggested that defendant be placed on a 60-day evaluation period since he should not be penalized for seeking voluntary treatment. The trial court found that the State had proved by clear and convincing evidence that defendant was in need of mental health services on an inpatient basis, that he was a danger to himself and

others, and that he was subject to involuntary admission. Defendant was then remanded to the Department of Mental Health for placement in a secure setting. The Department of Mental Health was ordered to report to the trial court every 60 days concerning defendant's status or changes in his condition or diagnosis.

The issue in this case is the period of time that a trial court can retain jurisdiction over a person who has been acquitted by reason of insanity and is thereafter granted a conditional release by the court.

On appeal, defendant asserts that the trial court erred in denying his petition for writ of *habeas corpus* because it had lost jurisdiction over him when his five-year conditional release period expired pursuant to section 5—2—4(h) of the Unified Code of Corrections. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—2—4(h) (now 730 ILCS 5/5—2—4(h) (West 1992)).) Defendant expresses that *People v. Butler* (1990), 194 Ill. App. 3d 297, 550 N.E.2d 1250, a case decided by this court, on which the trial court's determination was based, is not controlling precedent. Since neither the State nor the Department of Mental Health filed a petition to extend his five-year conditional release before it expired on November 14, 1993, defendant contends that the court lost jurisdiction. Defendant further argues that he should not be penalized for voluntarily seeking help from the Elgin Mental Health Center after the term expired.

Defendant argues that the plain language of the NGRI statute's conditional release provision (730 ILCS 5/5—2—4(i) (West 1992)) compels the conclusion that the trial court lost jurisdiction over defendant once his five-year period of conditional release expired. Defendant maintains that penal statutes must be construed against the government or parties seeking to enforce the statutory penalties and in favor of the persons on whom the penalties are sought to be imposed. *People v. Owens* (1992), 240 Ill. App. 3d 168, 171, 609 N.E.2d 159.

Defendant maintains that there is no ambiguity in the statute, which provides that periods of conditional release shall last for five years unless the Department petitions for an extension within that five-year period. As a result, defendant urges this court to overrule *Butler.*

Furthermore, defendant contends that the relevant legislative history conclusively proves the legislature's intent to limit the court's jurisdiction to five years in the absence of a timely petition for extension. Defendant asserts that the floor debates in both the Illinois House and the Illinois Senate show that the reason for the provision was to eliminate the then-required hearings from recurring every 60 days for those released patients who are well enough to be treated on

an out-patient basis. Instead, the trial court would retain jurisdiction over those persons who had been conditionally released for their five-year term, even to be recommitted if they violated the conditions of their release.

It appears that the case *People v. Cooper* (1989), 132 Ill. 2d 347, 547 N.E.2d 449, is important in deciding this issue in this case. Therefore, we will begin with a discussion of this case.

In the case of *People v. Cooper* (1989), 132 Ill. 2d 347, 547 N.E.2d 449, the defendant was found to be a sexually dangerous person. He was later conditionally released until a certain date. After that date had expired, the State filed a petition to revoke defendant's conditional release, which was granted by the court. The court held that even if a period of conditional release expires, a sexually dangerous person remains under the jurisdiction of the court. Only if, after a hearing, the court finds that he is no longer dangerous and is discharged does the court lose jurisdiction. The court pointed out that the legislature did not declare time limits for the conditional release of sexually dangerous persons whereas a sentence of probation does have an expiration date.

In explaining why the trial court retained jurisdiction over the defendant even though the period of conditional release had expired, the court stated:

> "The Illinois Legislature thought that sexually dangerous persons suffer from mental illness; the legislature intended that, instead of being criminally punished for their criminal sexual offenses, they be committed to the Department of Corrections for treatment until they are no longer considered sexually dangerous, and then discharged. (*People v. Allen* (1985), 107 Ill. 2d 91, 100-02, *aff'd* (1986), 478 U.S. 364, 92 L. Ed. 2d 296, 106 S. Ct. 2988.)" *Cooper*, 132 Ill. 2d at 355.

It is interesting to note that sexually dangerous persons are placed with the Department of Corrections, while persons acquitted by reason of insanity are placed with the Department of Mental Health. However, we do not rely on this distinction for our decision.

A recent supreme court decision indicates that time limits in the not guilty by reason of insanity statute are mandatory and not discretionary. In the case of *Radazewski v. Cawley* (1994), 159 Ill. 2d 372, 375, 639 N.E.2d 141, the court had to decide whether the provision stating that the "court shall set a hearing to be held within 30 days" was discretionary or mandatory. In that case, the petitioners were not granted hearings to determine whether they should be released within the 30-day period. The court ruled that the time period to hold a hearing was mandatory. The court explained "[i]t is

well settled that detention of an individual at a mental health care facility implicates a substantial liberty interest. [Citations.] Statutes involving involuntary admission procedures are therefore construed narrowly." 159 Ill. 2d at 378; see *People v. Bledsoe* (1994), 268 Ill. App. 3d 869, 873; *In re Splett* (1991), 143 Ill. 2d 225, 230, 572 N.E.2d 883.

It would seem to follow that all persons who are found not guilty by reason of insanity have a substantial liberty interest. They have not been convicted of any crime. Any time limits contained in that statute must be considered mandatory, including the time period for conditional release.

The State argues that when a person has been acquitted by reason of insanity and placed with the Department of Mental Health for treatment, the treatment can continue for an indefinite period, but shall not exceed the maximum length of time the defendant would have been required to serve in prison had he been convicted and received the maximum sentence for the most serious crime. In the case of Kenneth Marshall, the maximum sentence would expire in the year 2003. Thus, Marshall could be required to continue treatment until 2003 unless he were to be unconditionally discharged. The principal basis for the argument of the State is the case of *People v. Thiem* (1980), 82 Ill. App. 3d 956, 403 N.E.2d 647.

■ The problem with the State's argument is that it does not take into consideration the effect of a court order that grants a person a conditional release from treatment with the Department. We hold that when a court grants a person a conditional release for five years, the provisions of the NGRI statute take effect. The defendant can no longer be held by the Department until the maximum prison sentence would have expired under *Thiem*. Once a court finds, after hearing on a petition for condition release, that a defendant is entitled to be granted his request, and is awarded a conditional release, a defendant cannot be held for treatment beyond the five-year period unless a petition requesting that he be returned to the Department is filed within the five-year period. In that event, if the court grants the petition, the conditional release period may be extended an additional three years. The maximum conditional release period is a total of eight years. Ill. Rev. Stat. 1987, ch. 38, par. 1005—2—4(a)(1)(d) (now 730 ILCS 5/5—2—4(a)(1)(d) (West 1992)).

The Sexually Dangerous Persons Act (Ill. Rev. Stat. 1987, ch. 38, par. 105—1.01 *et seq.* (now 725 ILCS 205/0.01 *et seq.* (West 1992))) does not contain a time limit on the conditional release term. On the other hand, the not guilty by reason of insanity statute does contain a time limit on the conditional release term. Section 5—2—4(a)(1)(D) defines conditional release as follows:

"the release from the custody of either the Department of Mental Health and Developmental Disabilities or the custody of the Court of a person who has been found not guilty by reason of insanity under such conditions as the court may impose which reasonably assure the defendant's satisfactory progress in treatment or habilitation and the safety of the defendant and others. *** Such conditional release shall be for a period of five years, unless the defendant, the person or facility rendering the treatment, therapy, program or outpatient care, or the State's attorney petitions the Court for an extension of the conditional release period for an additional three years. *** In no event shall the defendant's period of conditional release exceed eight years." 730 ILCS 5/5—2—4(a)(1)(D) (West 1992).

Section 5—2—4(i) provides in pertinent part:

"If within the period of the defendant's conditional release, the court determines, after hearing evidence, that the defendant has not fulfilled the conditions of release, the court shall order a hearing ***. At such hearing, if the court finds that the defendant is subject to involuntary admission or in need of mental health services on an inpatient basis, it shall enter an order remanding him or her to the Department of Mental Health and Developmental Disabilities or other facility. *** If the court finds that the defendant continues to be in need of mental health services but not on an inpatient basis, it may modify the conditions of the original release in order to reasonably assure the defendant's satisfactory progress in treatment and his or her safety and the safety of others. In no event shall such conditional release be longer than eight years. Nothing in this Section shall limit a court's contempt powers or any other powers of a court." 730 ILCS 5/5—2—4(i) (West 1992).

The primary objective of statutory interpretation is to give effect to the legislature's intent. (*People v. Lowe* (1992), 153 Ill. 2d 195, 201, 606 N.E.2d 1167.) The legislature's intent is determined primarily from the legislative language itself, which affords the best means of its exposition. (*DiFoggio v. Retirement Board* (1993), 156 Ill. 2d 377, 382.) When the statute's language is clear on its face, its meaning should be given effect without resort to supplementary principles of statutory construction. (*People v. Singleton* (1984), 103 Ill. 2d 339, 342, 469 N.E.2d 200.) The legislative debates regarding the statute clearly indicated that the legislature intended that the trial court retain jurisdiction only during the conditional release term, not until defendant's maximum possible commitment time elapsed.

■ Our holding in *People v. Butler* (1990), 194 Ill. App. 3d 297, 550 N.E.2d 1250, is hereby overruled. We hold that the circuit court lost

jurisdiction over Marshall on November 13, 1993, when his five-year conditional release term expired since no petition was filed to extend the conditional release term. His writ of *habeas corpus* should have been granted, and the order remanding him to the Department of Mental Health is vacated and reversed.

We remand this case to the circuit court with directions to appoint the Cook County public guardian for Kenneth Marshall for the purpose of determining whether civil commitment procedures should be commenced. If it should be determined that no civil commitment procedures are deemed necessary, the jurisdiction of the circuit court is to be terminated.

Reversed and remanded.

RIZZI and TULLY, JJ., concur.