PAUL WILLIAMS, Plaintiff-Appellant, v. NANCY STAPLES, Hospital Adm'r of the Elgin Mental Health Center, Defendant-Appellee.

First District (4th Division)   No. 1—02—0397

Opinion filed February 13, 2003.

Mark J. Heyrman, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Peter Maltese, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Paul Williams, a person found not guilty by reason of insanity of first degree murder, filed a petition in the trial court for a writ of *habeas corpus* pursuant to section 10—124 of the Code of Civil Procedure (735 ILCS 5/10—124 (West 2000)). In that petition, plaintiff alleged that his confinement in the custody of the Department of Human Services was rendered unlawful by the expiration of his maximum period of confinement under section 5—2—4(b) of the Unified Code of Corrections (Code) (730 ILCS 5/5—2—4(b) (West 2000)). The trial court denied plaintiff's petition, and he now appeals. For the reasons that follow, we reverse and remand.

On December 19, 1982, the trial court, the Honorable Fred G. Suria, found plaintiff not guilty by reason of insanity (NGRI) on the charge of first degree murder and admitted him, involuntarily, to the custody of the Illinois Department of Mental Health and Developmental Disabilities, now the Department of Human Services (DHS). Thereafter, plaintiff was confined at the Elgin Mental Health Center, an inpatient psychiatric facility operated by the DHS.

On December 8, 2000, the trial court, once again the Honorable Fred G. Suria, issued an order granting the plaintiff conditional release for a period of five years under Code section 5—2—4(d)(2) (730 ILCS 5/5—2—4(d)(2) (West 2000)). The court also set September 26, 2001, as the last day for plaintiff's maximum period of confinement under Code section 5—2—4(b). Sometime after September 26, 2001, plaintiff allegedly violated the terms of his conditional release agreement by preliminarily testing positive for cocaine. Accordingly, the State filed a petition to revoke plaintiff's conditional release.

On November 28, 2001, plaintiff specially appeared to challenge the trial court's continued jurisdiction past the expiration of his maximum period of confinement, *i.e.*, September 26, 2001, and moved to dismiss the State's petition to revoke his conditional release. The trial court denied the plaintiff's motion and remanded him to the custody of the DHS. Plaintiff claims that his return to custody was for an evaluation as to whether he should be subject to involuntary admission.

On December 21, 2001, plaintiff filed a petition for a writ of *habeas corpus*, again challenging his confinement past the expiration of the maximum period of confinement under Code section 5—2—4(b). On December 28, 2001, the trial court, the Honorable William S. Wood, heard arguments regarding plaintiff's petition for a writ of *habeas corpus*. No evidence was produced at the hearing, and neither party asked the court to take judicial notice of any other orders. In addition to the facts that plaintiff alleged in his petition, he also revealed that Judge Suria issued a contempt citation and a $100,000 warrant for plaintiff's arrest following his testing positive for cocaine. According to the plaintiff's representations at the hearing, he was arrested four days later. The defendant, Nancy Staples, the director of the Elgin facility, responded that Judge Suria had held a hearing regarding plaintiff's conditional release and that the State had argued in favor of the trial court's continuing jurisdiction. The defendant also noted that after the hearing regarding the court's jurisdiction over plaintiff's conditional release violation, Judge Suria held that he had jurisdiction and ordered that the DHS evaluate the plaintiff. Finally, the State noted that plaintiff's contempt citation was still pending. The trial court then denied plaintiff's petition for a writ of *habeas corpus*.

■ The issues in the instant case involve only questions of law and statutory interpretation; therefore, the standard of review is *de novo*. *People v. Hall*, 195 Ill. 2d 1, 21 (2000).

■ Plaintiff's only argument on appeal is identical to that which he made twice before the trial court in his special appearance and in his petition for a writ of *habeas corpus*; namely, that he is being unlawfully confined past the expiration of his maximum period of confinement under Code section 5—2—4(b). By way of background, proceedings after acquittal by reason of insanity are governed by Code section 5—2—4, which provides, in pertinent part, that if an NGRI acquittee is to be involuntarily committed to the DHS, that confinement:

> "[S]hall not exceed the maximum length of time that the defendant would have been required to serve, less credit for good behavior, before becoming eligible for release had he been convicted of and received the maximum sentence for the most serious crime for which he has been acquitted by reason of insanity. The Court shall determine the maximum period of commitment by an appropriate order." 730 ILCS 5/5—2—4(b) (West 2000).

The end of this period is known as the *"Thiem"* date. See *People v. Cross*, 274 Ill. App. 3d 159, 161 (1995); *People v. Thiem*, 82 Ill. App. 3d 956, 962 (1980) (holding that "the trial court should determine and fix a definite maximum period of commitment"). According to the supreme court, "[t]he maximum thus determined will represent the

outer limit of the defendant's possible commitment. The defendant cannot be held beyond that maximum." *People v. Tanzy*, 99 Ill. 2d 19, 21 (1983).

Consequently, when institutionalized NGRI acquittees reach their *Thiem* date, the DHS either releases them or recommits them as civil patients, voluntarily or involuntarily, depending on the circumstances. See *Lucas v. Peters*, 318 Ill. App. 3d 1, 5 (2000). In turn, the decision of whether NGRI acquittees are to be released or recommitted arises from a court's weighing of his or her liberty interest in not being institutionalized indeterminably[1] against the State's interest in protecting society from the premature release of mentally ill persons. See *People v. Jurisec*, 199 Ill. 2d 108, 129 (2002); *People v. Palmer*, 148 Ill. 2d 70, 94 (1992); *People v. Winston*, 191 Ill. App. 3d 948, 959 (1989).

Regardless of how a trial court wishes to proceed, however, Illinois courts consistently have held that the NGRI acquittees' *Thiem* date is the outside limit for their period of confinement in the criminal or "forensic"[2] context. For example, in *People v. Leppert*, 105 Ill. App. 3d 514 (1982), this court held that "[t]he statute provides a clear formula for commitment: the time shall be indefinite, and the maximum is set by operation of law. *** The court may not state a maximum length of commitment any different than that provided by statute." *Leppert*, 105 Ill. App. 3d at 519-20. Such language indicates that a court's duty in that regard is ministerial rather than discretionary. See also *People v. Pastewski*, 164 Ill. 2d 189, 201 (1995) ("Given the rationale for the statute, it would be odd to place in the trial judge discretion to select, as a maximum period of commitment, a time other than the longest span provided by statute").

Moreover, we have found reversible error where the trial court extended an NGRI acquittee's period of confinement for an additional 15 months beyond the maximum provided by Code section 5—4—2(b) because he was involved in several altercations during his confinement. In *In re Commitment of Guy*, 126 Ill. App. 3d 267 (1984), this court held that an NGRI acquittee's conduct during commitment was irrelevant to the determination of the maximum confinement period "because the maximum length of the commitment period must be set

---

[1]See *Radazewski v. Cawley*, 159 Ill. 2d 372, 378 (1994) ("detention of an individual at a mental health care facility implicates a substantial liberty interest").

[2]"The Department has classified certain of its mental health facilities as 'forensic.' The patients at the forensic facilities are all NGRIs, criminal defendants found unfit to stand trial (USTs) and patients considered to be behavior management problems." *Lucas*, 318 Ill. App. 3d at 5.

before the period has even begun." *Guy*, 126 Ill. App. 3d at 269-70. Specifically, the *Guy* court found that the trial court erred in using the petitioner's later conduct as a basis for revoking good-time credits that were factored into a previously correct calculation of his *Thiem* date. *Guy*, 126 Ill. App. 3d at 270. Ultimately, the court found that because that revocation unlawfully extended his *Thiem* date, his petition for a writ of *habeas corpus* should have been granted because it was filed after his correctly calculated *Thiem* date. *Guy*, 126 Ill. App. 3d at 270-71.

In the present case, the defendant apparently concedes that plaintiff's release date of September 26, 2001, was correctly calculated. However, plaintiff notes, the court continued to confine him past that date. Under *Guy*, plaintiff claims that neither his conditional release period nor his alleged violation of that conditional release may extend his statutory maximum period of commitment. Accordingly, where the laws of *habeas corpus* provide that a person may be discharged from the custody of the court "[w]here the court has exceeded the limit of its jurisdiction, either as to the matter, place, sum or person" (735 ILCS 5/10—124 (West 2000)), and where plaintiff filed his petition of a writ of *habeas corpus* on December 21, 2001, nearly two months after the expiration of his *Thiem* date, plaintiff argues that we should reverse the trial court and find that he is entitled to his immediate release.

■ The defendant first responds that the plaintiff violated Supreme Court Rule 321 (155 Ill. 2d R. 321) by not including Judge Suria's November 28, 2001, order which confined the plaintiff to the DHS for an evaluation.[3] Supreme Court Rule 321 provides:

"The record on appeal shall consist of the judgment appealed from, the notice of appeal, and the entire original common law record, unless the parties stipulate for, or the trial court, after notice and hearing, or the reviewing court, orders less. The common law record includes every document filed and judgment and order entered in the cause and any documentary exhibits offered and filed by any party. Upon motion the reviewing court may order that other exhibits be included in the record. The record on appeal shall also include any report of proceedings prepared in accordance

---

[3]The defendant also argues that the plaintiff did not include a written order from December 28, 2001, in the record. However, as plaintiff points out, there is nothing to suggest in Rule 321 that a written order is required—it only states that the appellant must include a copy of the "order appealed from." Here, plaintiff is appealing from an oral ruling, and the defendant acknowledges that plaintiff "did *** include the court's oral ruling." Accordingly defendant's argument is without merit.

with Rule 323. There is no distinction between the common law record and the report of proceedings for the purpose of determining what is properly before the reviewing court." 155 Ill. 2d R. 321. Defendant notes that the failure to present an adequate record on appeal results in waiver of any issue for which the record is insufficient to support a claim of error. *People v. Green*, 288 Ill. App. 3d 402, 407 (1997).

For example, in *Best Coin-Op, Inc. v. Fountains on Carriage Way Condominium Ass'n*, 239 Ill. App. 3d 1062 (1992), the plaintiff appealed a trial court's ruling granting partial summary judgment to the defendant. Quoting Rule 321, we found that the record which the plaintiff filed was inadequate because it did not contain the trial court's order of summary judgment. *Best Coin-Op*, 239 Ill. App. 3d at 1063. Instead, the plaintiff included the trial court's subsequent order denying the plaintiff's motion to reconsider. *Best Coin-Op*, 239 Ill. App. 3d at 1063. We dismissed the appeal with prejudice and held:

"An order denying an appellant's motion for reconsideration is not the order or judgment of the trial court which is brought before this court on appeal. Our role as a reviewing court is to consider the legal propriety of the trial court's decision, not in granting or denying a motion for reconsideration, but the underlying order or judgment which is at issue on a motion for reconsideration." *Best Coin-Op*, 230 Ill. App. 3d at 1063.

Defendant argues that the case at bar is analogous to *Best Coin-Op*, because even though the present case deals with plaintiff's petition for a writ of *habeas corpus*, the relevant issue is the legal propriety of the underlying order in which Judge Suria had the plaintiff confined for an evaluation. Here, defendant argues, where the plaintiff failed to include the underlying order confining him for an evaluation, as well as the report of proceedings relevant to that confinement, he is no different from the plaintiff in *Best Coin-Op* who failed to include the underlying summary judgment order.

At the outset, we agree with the defendant that the plaintiff's failure to include the November 28, 2001, order in the record makes it most difficult to determine how, exactly, Judge Suria exercised jurisdiction over the plaintiff and how he justified the plaintiff's continued confinement. As a result, even the parties disagree on appeal as to why the plaintiff was before the trial court on November 28, 2001, and why the trial court reached its result. On one hand, the plaintiff claims that the trial court remanded him to the custody of the DHS to determine whether he was in need of further inpatient care. On the other, the defendant claims that the trial court remanded plaintiff for an evaluation to determine whether he was capable of forming the requisite intent to commit contempt of court.

Interestingly, the logical conclusions of those conflicting theories are the bases for each party's argument. If plaintiff was remanded for a determination of his involuntary admission, the trial court necessarily would be extending its jurisdiction over the defendant for the underlying murder past the plaintiff's *Thiem* date. However, if the plaintiff was remanded for a determination as to whether he could intentionally commit contempt of court, then the court simply would be exercising the jurisdiction it afforded itself when it granted the defendant a conditional release—something that defendant claims is altogether different from plaintiff's *Thiem* date.

■ However, regardless of the analysis the court used in its determination to remand the plaintiff, the issue remains the same: whether the NGRI statute's conditional release provision can extend a court's jurisdiction over an NGRI acquittee past his expired *Thiem* date. As that is a matter of statutory interpretation, it is a question of law. *Yang v. City of Chicago*, 195 Ill. 2d 96, 103 (2001). It is well established that if an issue presented on appeal is solely a question of law, the absence of a complete record will not prevent appellate review. *Jackson v. Naffah*, 241 Ill. App. 3d 1043, 1046 (1993). Accordingly, we decline defendant's invitation to dismiss this appeal based upon an incomplete record.

■ The defendant next addresses the plaintiff's substantive argument. She asserts that regardless of whether the plaintiff is considered to be an NGRI acquittee, the trial court's order of his conditional release remains in effect for a period of at least five years and allows the trial court to punish the plaintiff for contempt based on violations of the court's order. The NGRI statute's conditional release provision reads:

 " 'Conditional Release' means: the release from either the custody of the Department of Human Services or the custody of the Court of a person who has been found not guilty by reason of insanity under such conditions as the Court may impose which reasonably assure the defendant's satisfactory progress in treatment or habilitation and the safety of the defendant and others. The Court shall consider such terms and conditions which may include, but need not be limited to, outpatient care, alcoholic and drug rehabilitation programs, community adjustment programs, individual, group, family, and chemotherapy, periodic checks with the legal authorities and/or the Department of Human Services. The person or facility rendering the outpatient care shall be required to periodically report to the Court on the progress of the defendant. Such conditional release shall be for a period of five years, unless the defendant, the person or facility rendering the treatment, therapy, program or outpatient care, or the State's At-

torney petitions the Court for an extension of the conditional release period for an additional three years. *** In no event shall the defendant's period of conditional release exceed eight years." 730 ILCS 5/5—2—4(a)(1)(D) (West 2000).

Accordingly, defendant argues that where the plaintiff's current confinement is based on the trial court's arrest warrant and contempt citation for plaintiff's failure to comply with the terms of his conditional release—and is not related to his NGRI status regarding the underlying offense—the plaintiff is properly under the five-year jurisdiction of the trial court as indicated in the conditional release provision.

Defendant further argues that the plaintiff's focus on his *Thiem* date as the absolute limit of the trial court's jurisdiction over him ignores the language of the conditional release provision of the NGRI statute. As noted, Code section 5—2—4(a)(1)(D) states that a "conditional release *shall* be for a period of five years." (Emphasis added.) 730 ILCS 5/5—2—4(a)(1)(D) (West 2000). Such language, she argues, clearly mandates a five-year period of jurisdiction over an individual and provides no exceptions except for a possible three-year extension.

Moreover, defendant notes that there is nothing in the statute that limits conditional release to individuals who have five or more years remaining in their *Thiem* period and that to read such a limitation into the statute would lead to absurd results. Defendant asserts that people nearing the expiration of their *Thiem* dates are those who have benefitted from the majority of the term of their court-imposed treatment and, most likely, would be better candidates for conditional release than those with a great deal of time remaining in their *Thiem* periods.

However, following the plaintiff's arguments, defendant asserts, trial courts would be unable to grant conditional release to people with less than five years remaining in their *Thiem* periods, as the courts would be unable to comply with the minimum five-year jurisdictional period prescribed by the statute. Accordingly, those people would be divested automatically of the progressive step benefits of a conditional release. In addition, defendant argues, this result would encourage courts to grant conditional release at least five years prior to the expiration of *Thiem* dates, which, in some cases, might be premature for some individuals except for the court's inability to grant such release when those individuals are within five years of their *Thiem* dates. Because absurd constructions must be avoided (*In re D.D.*, 196 Ill. 2d 405, 418-19 (2001)), defendant argues that the only rational interpretation of Code section 5—2—4 is that the provision

requiring a five-year length of conditional release supercedes an individual's *Thiem* date.

Defendant asserts that the case of *People v. Marshall*, 273 Ill. App. 3d 969 (1995), supports her contention. In *Marshall*, the defendant had been found not guilty by reason of insanity for the crimes of first degree murder, armed violence, and aggravated battery. *Marshall*, 273 Ill. App. 3d at 970. The trial court found that the defendant was subject to involuntary admission and placed him in the custody of the Illinois Department of Mental Health and Developmental Disabilities for a period not to extend past a *Thiem* date of February 29, 2003. On November 15, 1988, the defendant was granted a conditional release which, because no petition had been filed seeking an extension, expired on November 15, 1993. *Marshall*, 273 Ill. App. 3d at 970. At a later court hearing, the State argued that the trial court retained jurisdiction over the defendant until the expiration of his *Thiem* date even though his conditional release had expired and no extension was sought. *Marshall*, 273 Ill. App. 3d at 971. After a hearing to determine the defendant's mental health status, the trial court concluded that the defendant was in need of mental health services on an inpatient basis, that he was a danger to himself and others, and that he was subject to involuntary admission. *Marshall*, 273 Ill. App. 3d at 972-73.

Focusing on the mandatory time limits in the NGRI statute, this court reversed and held:

> "[W]hen a court grants a person a conditional release for five years, the provisions of the NGRI statute take effect. The defendant can no longer be held by the Department until the maximum prison sentence would have expired under *Thiem*. Once a court finds, after hearing on a petition for condition release, that a defendant is entitled to be granted his request, and is awarded a conditional release, a defendant cannot be held for treatment beyond the five-year period unless a petition requesting that he be returned to the Department [of Mental Health] is filed within the five-year period. In that event, if the court grants the petition, the conditional release period may be extended an additional three years. The maximum conditional release period is a total of eight years. Ill. Rev. Stat. 1987, ch. 38, par. 1005—2—4(a)(1)(d) (now 730 ILCS 5/5—2—4(a)(1)(d) (West 1992))." *Marshall*, 273 Ill. App. 3d at 975.

Put another way, defendant argues, the *Marshall* court determined that once a trial court has granted a conditional release to an NGRI acquittee, his *Thiem* date no longer applies. Instead, the court then exercises its jurisdiction under either Code section 5—2—4(h) or Code section 5—2—4(i) (730 ILCS 5/5—2—4(h), (i) (West 2000)) if it chooses to discharge a defendant because he no longer requires mental health

services or if it finds that a defendant has not fulfilled the conditions of release.

In the present case, therefore, defendant claims that once the court granted plaintiff a conditional release, it immediately stripped itself of its *Thiem* date jurisdiction over him, and instead obtained the minimum five-year period of jurisdiction dictated by the conditional release provision. Such a result, defendant concludes, is also consistent with the conditional release provision's explicit instruction that the trial court's contempt powers are not to be limited by the NGRI statute. 730 ILCS 5/5—2—4(i) (West 2000). Here, therefore, where there was an outstanding contempt charge against the plaintiff for his alleged violation of the conditional release, the defendant argues that the court was simply holding the plaintiff for a hearing to determine his capacity to commit the crime of contempt. See *People v. Sheahan*, 150 Ill. App. 3d 572, 575 (1986) (held that in situations where a trial court is considering holding in contempt a defendant suffering from mental illness, a hearing on the defendant's mental capacity to commit the crime was required).

■ The supreme court has held:

"When determining legislative intent, the starting point always is the language of the statute, which is the most reliable indicator of the legislature's objectives in enacting the particular law. [Citations.] When the language of a statute is plain and unambiguous, courts may not read in exceptions, limitations, or other conditions. [Citations.] Only when the meaning of the enactment cannot be ascertained from the language may a court look beyond the language and resort to aids for construction. [Citations.]" *In re D.D.*, 196 Ill. 2d 405, 419 (2001).

In the present case, we think that Code section 5—2—4 is open to at least two interpretations regarding the calculation of the time period of a trial court's jurisdiction over an NGRI acquittee and, therefore, is ambiguous. "When there is an alleged conflict between two statutes, the court has the duty to construe the statutes in a manner that avoids inconsistency and gives effect to both statutes, where such an interpretation is reasonably possible. *McNamee v. Federated Equipment & Supply Co.*, 181 Ill. 2d 415, 427, 692 N.E.2d 1157, 1163 (1998)." *Gibbs v. Lewis & Clark Marine, Inc.*, 298 Ill. App. 3d 743, 747 (1998). Consequently, we will look to supplementary principles of statutory construction.

■ Initially, we find that language from *Marshall* is persuasive, but not for the defendant. In *Marshall*, this court analyzed language from a supreme court decision which found that the time limits in the NGRI statute are mandatory and not discretionary:

"In the case of *Radazewski v. Cawley* (1994), 159 Ill. 2d 372, 375, 639 N.E.2d 141, the court had to decide whether the provision stating that the 'court shall set a hearing to be held within 30 days' was discretionary or mandatory. In that case, the petitioners were not granted hearings to determine whether they should be released within the 30-day period. The court ruled that the time period to hold a hearing was mandatory. The court explained '[i]t is well settled that detention of an individual at a mental health care facility implicates a substantial liberty interest. [Citations.] Statutes involving involuntary admission procedures are therefore construed narrowly.' 159 Ill. 2d at 378; see *People v. Bledsoe* (1994), 268 Ill. App. 3d 869, 873; *In re Splett* (1991), 143 Ill. 2d 225, 230, 572 N.E.2d 883." *Marshall*, 273 Ill. App. 3d at 974-75.

Accordingly, this court found:

"It would seem to follow that all persons who are found not guilty by reason of insanity have a substantial liberty interest. They have not been convicted of any crime. Any time limits contained in that statute must be considered mandatory, including the time period for conditional release." *Marshall*, 273 Ill. App. 3d at 975.

In so finding, the *Marshall* court held that the terms of the conditional release provision of the NGRI statute would operate mandatorily to release an NGRI acquittee from the trial court's jurisdiction if the State did not petition the court for an extension of that release within five years. In other words, in construing the statute, the court focused heavily on the substantial liberty interests of the NGRI acquittee and found that, once the court granted him or her a conditional release, it effectuated the possibility that its own jurisdiction over that individual could be halted if the State chose not to pursue an extension of the release.

Importantly, however, there is nothing to suggest that the *Marshall* court intended that the time periods listed in the conditional release provision of the NGRI statute should supercede an individual's *Thiem* period in every circumstance. Instead, the court concentrated only on whether the conditional release provision could operate to abbreviate the trial court's jurisdiction over a defendant who still had 10 years remaining until the expiration of his *Thiem* date. Nowhere in the court's reasoning is it at all apparent that the court even analyzed the reciprocal of its eventual holding, namely, whether the conditional release provision could operate to *extend* a court's jurisdiction over an individual past his *Thiem* date. Accordingly, in light of the *Marshall* court's focus on assigning mandatory status to the time limits in the statute that could *shorten* a court's jurisdiction over an NGRI acquittee based on his or her substantial liberty interests, we think it would

be antithetical to *Marshall* to find that a court could, by granting conditional release, expand its jurisdiction over an NGRI acquittee beyond his or her *Thiem* date. As noted, it has long been held that the *Thiem* date is simply the outside limit of the court's jurisdiction. *Tanzy*, 99 Ill. 2d at 21; *People v. Spudic*, 144 Ill. App. 3d 1071, 1076 (1986) ("[o]nce *** the statutory maximum has been reached, the defendant may no longer be held under the terms of section 5—2—4"); *People v. Hampton*, 121 Ill. App. 3d 273, 277 (1983).

■ "In determining the intent of the legislature, the court may properly consider not only the language of the statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved." *People v. McGee*, 326 Ill. App. 3d 165, 169 (2001), citing *People v. Frieberg*, 147 Ill. 2d 326, 345 (1992). A review of the legislative debate on Public Act 81—1497, effective September 19, 1980, also sheds light on the role of the five-year time frame mandated by the conditional release provision in the NGRI statute. The bill's sponsor, Representative Katz, stated in floor debate that the purpose of his proposed amendment to the NGRI statute was to provide more control over NGRIs for the protection of society:

> "I doubt if there is an issue that is brought to legislators more often in terms of complaint of the citizenry than the instances of individuals who are found not guilty by reason of insanity who are released because they are not in need of mental treatment and they are released and then they go on to commit another violent crime. *** What this bill does is to provide that in the instance of an individual found not guilty by reason of insanity that that individual will be sent to the facilities of the Department of Mental Health where they will make an evaluation of the defendant. On the evaluation, they may find that he can be involuntarily admitted because he is a danger to himself or others and that's currently the situation. However, they can also find that the individual is in need of mental health services. If the individual is found to be in need of mental health services he is given a conditional discharge, or a conditional release by the courts and for a period of five years he will be under the jurisdiction of the Department of Mental Health. They may decide that he needs hospitalizing and institutional-iz[ing] and may keep him in the hospital. They may also put him on an outpatient basis. But rather than letting the individual simply float around in the community and be unknown to everyone until he commits a violent crime or act again, the superintendent of the Department of Mental Health follows that individual. *** This is . . . will be a great help in terms of trying to eliminate those terrible cases in which individuals who have committed violent crimes are released to go on to commit another crime." 81st Ill.

458

Gen. Assem., House Proceedings, May 17, 1979, at 101-02 (statements of Representative Katz).

Later, Representative Katz was asked specifically why he included the five-year jurisdictional period, and he responded:

"The five year period that we put in is five years longer than the present law is . . . .

\* \* \*

Alright. So this was an attempt to strengthen the present law, not to weaken it. It strengthens the present law. You have an individual who has been found not guilty by reason of insanity . . . it was felt here and it is the experience in Maryland that five years is an adequate time to monit[or] that individual and see his return to society. That individual has been found not be have committed a crime, five years was felt to be a reasonable period of time to monit[or] and supervise the case. \*\*\* Under the present law, if the individual is brought in and he is found not in need of treatment, the Judge can release him immediately. This bill broadens that concept. \*\*\* It is a stronger bill than the present [law]." 81st Ill. Gen. Assem., House Proceedings, May 17, 1979, at 106-07 (statements of Representative Katz).

Representative Katz repeated those sentiments in his closing:

"This bill gives the Department of Mental Health the power to put an individual who is a danger to himself or to others, they can put him in involuntary admission and confine him in a State hospital to [sic] as long as he is such a threat. If he does not fall into that category, rather than releasing him as maybe the case in some instances now, if he is in need of mental health services, he is given a conditional discharge, a release for five years. During the five year period he is monitored. He is required to report regularly. If he does not do so, he can then be put by the Department of Mental Health into the hospital and kept there as long as they feel that he needs [to be kept.]" 81st Ill. Gen. Assem., House Proceedings, May 17, 1979, at 108-09 (statements of Representative Katz).

Those statements by the bill's sponsor, in turn, were echoed in the Senate proceedings by Senator Sangmeister:

"There have been a lot of proposals that have been made as to what we ought to do in the insanity area, particularly when a defendant is found not guilty by reason of insanity. Under the present law, as you know, a person if found not guilty by reason of insanity is committed to the Department of Mental Health. There's an evaluation made there and the person can be, by the [D]epartment, put back out in the street. There's long been [the] feeling that we ought to do something more than that and that's what Committee Bill 1010 does. It sets up the fact that you still go to the Department of Mental Health, there's an evaluation made there.

Whether you are to be released, which would be very doubtful under those circumstances, whether you should need . . . outpatient care or inpatient care, you're then brought back to the court and the court has to hear that testimony and [an] evaluation is made. From there on the . . . the defendant is under the jurisdiction of that court for five years subject to whatever . . . orders the court may wish to impose on that particular defendant." 81st Ill. Gen. Assem., Senate Proceedings, June 27, 1979, at 340-41 (statements of Senator Sangmeister).

That language supports the conclusion that the intent of the legislature in enacting the conditional release provision was to protect against the premature release of NGRI acquittees into society without the ability to monitor their behavior. Moreover, it appears that the five-year jurisdictional time period was included only to allow the Department of Mental Health and the courts an acceptable time to supervise the release of NGRI acquittees who, under the previous law, would have been released into society without any restrictions. Nothing, however, suggests that the legislature intended this five-year time period as a way for courts to extend their jurisdiction over an NGRI acquittee past his or her *Thiem* date. The following colloquy on the Senate floor reveals as much:

"SENATOR NIMROD: Senator Sangmeister, it seemed to me that the unfit to . . . or not guilty by reason of insanity, that we had a provision in there that would have kept the individual under the jurisdiction of the court for the same period of time as though he had been found guilty. Have we . . . have we changed that section at all? That was a bill that we passed here . . . I had sponsored here a couple of years ago and I want to make sure that we're not affecting that particular provision.
* * *

SENATOR SANGMEISTER: That . . . that's not in this bill at all, Senator Nimrod. This is a five-year period from the date that that finding is entered.
* * *

SENATOR NIMROD: Yeah, and . . . and . . . then we're probably not touching that section, because I couldn't read it in here." 81st Ill. Gen. Assem., Senate Proceedings, June 30, 1980, at 27-28 (statements of Senators Nimrod and Sangmeister).

From all appearances, the legislature never intended or even contemplated the applicability of this section to NGRI acquittees found to be subject to involuntary admission who later are conditionally released. The reason for this seems clear, for if an NGRI acquittee is involuntarily admitted, he or she does not pose a danger or risk to society at that point. Nevertheless, as *Marshall* later held, the DHS

may, in its discretion, choose to conditionally release an NGRI acquittee before the expiration of his or her *Thiem* date without violating the *Thiem* date, at which point the court's jurisdiction is abridged to five or eight years, depending on the circumstances. *Marshall*, 273 Ill. App. 3d at 976-77. As noted, however, such a holding does not allow a court to confer additional jurisdiction to itself over an NGRI acquittee in violation of *Thiem*; it only allows a court to reduce the extent of its jurisdiction over an NGRI acquittee.

■ We wish to emphasize that we do not disagree or take issue with the holding in *Marshall*. In fact, we also espouse the idea of mandatory time limits for NGRI acquittees in light of their substantial liberty interests. Therefore, in attempting to give effect to both statutes, we interpret the conditional release provision of the NGRI statute, Code section 5—2—4(a)(1)(D), to read that such conditional release shall be for a period of five or eight years as long as such period does not violate the NGRI acquittee's *Thiem* date, as mandated by Code section 5—2—4(b). In other words, an involuntarily committed NGRI acquittee with less than five years in his *Thiem* period may be granted a conditional release, but the court's jurisdiction over the NGRI acquittee is ultimately limited by however much time is remaining in his or her *Thiem* period, *i.e.*, the "outer limit of the defendant's possible commitment." Once an NGRI acquittee's *Thiem* date has expired, his or her period of conditional release must necessarily expire as well.

■ Therefore, with regard to the present case, we find that the circuit court lost jurisdiction over the plaintiff on September 26, 2001, when his *Thiem* date expired. The provisions of the conditional release provision simply do not countenance a *Thiem* violation. Consequently, we hold that plaintiff's petition for writ of *habeas corpus* should have been granted, and the order remanding him to the DHS is reversed. Nevertheless, we also remand this case to the circuit court, with directions to appoint the Cook County public guardian for the plaintiff, for the purpose of ascertaining whether civil commitment procedures should be commenced. If the court determines that no civil commitment procedures are necessary, the jurisdiction of the circuit court is to be terminated.

For the reasons listed, we reverse the circuit court's decision to remand the plaintiff to the custody of the DHS. In addition, we remand the case to the circuit court for a determination as to plaintiff's potential civil commitment.

Reversed and remanded.

THEIS, P.J., and KARNEZIS, J., concur.