Docket No. 95873–Agenda 13–November 2003.

PAUL WILLIAMS, Appellee, v. NANCY STAPLES, Hospital Adm’r of the Elgin Mental Health Center, Appellant.

Opinion filed January 23, 2004.

JUSTICE THOMAS delivered the opinion of the court:

Paul Williams, plaintiff in the proceedings below and defendant in the original criminal proceedings, filed a petition for writ of 
habeas corpus
 in the circuit court of Cook County pursuant to section 10–124 of the Code of Civil Procedure (735 ILCS 5/10–124 (West 2000)). Williams’ petition alleged that he was in the custody of the Department of Human Services (DHS) in Elgin, Illinois, and that his detention was illegal because his maximum period of confinement under section 5–2–4(b) of the Unified Code of Corrections (the Code) (730 ILCS 5/5–2–4(b) (West 2000)) had expired. The circuit court denied Williams’ petition for writ of 
habeas corpus
 and remanded Williams to the custody of the DHS. The appellate court reversed the circuit court’s order and remanded the cause to the circuit court for a determination concerning whether Williams should be civilly committed. 337 Ill. App. 3d 445. This court allowed the State’s petition for leave to appeal. See 177 Ill. 2d R. 315(a). For the following reasons, we affirm the decision of the appellate court in part and vacate in part.

In the original criminal proceedings, Williams was charged with first degree murder for killing and dismembering his sister. At the time of the murder, Williams was abusing narcotics. On December 19, 1982, the trial court found Williams not guilty by reason of insanity. Williams was involuntarily committed to the custody of the Illinois Department of Mental Health and Developmental Disabilities (now the DHS), and was confined to the Elgin Mental Health Center (Elgin). Williams was involuntarily committed pursuant to section 5–2–4(b) of the Code.

Section 5–2–4(b) provides that the maximum period of time that a defendant can be involuntarily committed cannot exceed the maximum length of time that the defendant would have been required to serve, less credit for good behavior, before becoming eligible for parole had defendant been convicted of and received the maximum sentence for the most serious crime for which he was found not guilty by reason of insanity. See 730 ILCS 5/5–2–4(b) (West 2000), formerly Ill. Rev. Stat. 1981, ch. 38, par. 1005–2–4(b). This maximum length of time is known as the defendant’s 
Thiem
 date. See 
People v. Thiem
, 82 Ill. App. 3d 956 (1980). In this case, the circuit court originally determined that Williams’ maximum period of commitment was 80 years. Based upon subsequent case law, however, the trial court on December 8, 2000, reset Williams’ 
Thiem
 date to September 26, 2001.

Also on December 8, 2000, the trial court granted the petition of the Elgin facility director to conditionally release defendant for a period of five years, pursuant to section 5–2–4(d)(2) of the Code (730 ILCS 5/5–2–4(d)(2) (West 2000)), over Williams’ objection to the five-year period. Sometime after September 26, 2001, but prior to the expiration of the five-year conditional release period, Williams violated the terms of his conditional release by preliminarily testing positive for cocaine. The State therefore filed a petition to revoke Williams’ conditional release. Williams filed a special and limited appearance contesting the circuit court’s jurisdiction and seeking to dismiss the State’s petition to revoke his conditional release. Thereafter, Williams again tested positive for cocaine. The circuit court then issued a contempt citation and issued a warrant for Williams’ arrest. Williams was arrested around four days later.

At the hearing on the contempt citation, Williams argued that the circuit court lacked jurisdiction over him because his 
Thiem
 date had expired. The circuit court held that even though the 
Thiem
 date had expired, the conditional release period provided jurisdiction. The circuit court entered a finding that Williams had violated his conditional release and remanded Williams to the custody of the DHS for an evaluation of whether he required involuntary commitment. The circuit court did not enter a finding on the contempt citation. Over Williams’ continuing objection to the court’s jurisdiction, Williams was evaluated and found to be subject to inpatient treatment, but not to involuntary commitment.
(footnote: 1) Williams then filed his petition for writ of 
habeas corpus
.

As noted, the circuit court denied Williams’ petition for writ of 
habeas corpus
. On appeal, Williams claimed that he was entitled to an immediate release because the circuit court could not continue to confine him past September 26, 2001, his 
Thiem
 date. 337 Ill. App. 3d at 450. Williams also argued that neither his conditional release nor his alleged violation of the conditional release could extend his maximum period of commitment beyond his 
Thiem
 date. 337 Ill. App. 3d at 450. The State, on behalf of Nancy Staples, hospital administrator of the Elgin Mental Health Center,
(footnote: 2) responded that once a defendant is conditionally released, the five-year period of conditional release set forth in section 5–2–4(a)(1)(D) of the Code (730 ILCS 5/5–2–4(a)(1)(D) (West 2000)) supercedes the defendant’s 
Thiem
 date.

In reversing the circuit court, the appellate court found that the circuit court lost jurisdiction over Williams on September 26, 2001, when his 
Thiem
 date expired. 337 Ill. App. 3d at 460. The appellate court examined the legislature history of the statute and concluded that the legislature did not intend for the five-year conditional release period to extend a court’s jurisdiction over a not guilty by reason of insanity (NGRI) defendant past his 
Thiem
 date. The appellate court held that although an NGRI defendant may be conditionally released prior to his 
Thiem
 date, the five-year period of conditional release may be limited by the amount of time remaining on his 
Thiem
 date. 337 Ill. App. 3d at 460. Consequently, once an NGRI defendant’s “
Thiem
 date has expired, his or her period of conditional release must necessarily expire as well.” 337 Ill. App. 3d at 460.

Before this court, the State argues that the appellate court erred in holding that an NGRI defendant’s conditional release automatically terminates on his 
Thiem
 date. The State claims that the appellate court ignored the mandate of section 5–2–4(a)(1)(D) of the Code, which states that the trial court “shall” place an NGRI defendant on conditional release for a period of five years. The State contends that because Williams was conditionally released under section 5–2–4(a)(1)(D) prior to his 
Thiem
 date, Williams’ 
Thiem
 date became irrelevant because he was no longer confined. Rather, Williams was now subject to a five-year period of conditional release, with the possibility of one three-year extension. The State compares this conditional release period to the mandatory supervised release period, or parole, imposed upon convicted defendants.

Williams responds that after the expiration of his 
Thiem
 date, he could no longer be confined as an NGRI defendant, but had to be released or committed pursuant to the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/1–100 
et seq
. (West 2000)). Williams argues that because the 
Thiem
 date is the outside limit for his period of confinement, the conditional release period cannot extend beyond his 
Thiem
 date.

At issue in this case, then, is which portion of section 5–2–4 of the Code controls when an NGRI defendant is conditionally released prior to his 
Thiem
 date, but his 
Thiem
 date expires prior to the expiration of his conditional release period. Because our analysis of this issue involves the construction of a statute, the issue presents a question of law that we review 
de novo
. 
In re Estate of Dierkes
, 191 Ill. 2d 326, 330 (2000).

The fundamental rule of statutory construction is to ascertain and give effect to the legislature’s intent. 
Michigan Avenue National Bank v. County of Cook
, 191 Ill. 2d 493, 503-04 (2000). This court determines legislative intent by examining the language of the statute, which is “the most reliable indicator of the legislature’s objectives in enacting a particular law.” 
Michigan Avenue National Bank
, 191 Ill. 2d at 504. All provisions of a statutory enactment are viewed as a whole. 
People ex rel. Sherman v. Cryns
, 203 Ill. 2d 264, 279 (2003). Accordingly, words and phrases must be interpreted in light of other relevant provisions of the statute and must not be construed in isolation. 
Cryns
, 203 Ill. 2d at 279-80. Each word, clause and sentence of a statute must be given reasonable meaning, if possible, and should not be rendered superfluous. 
Cryns
, 203 Ill. 2d at 280. In determining the intent of the legislature, a court may consider not only the language of the statute, but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved. 
Cryns
, 203 Ill. 2d at 280. “Legislative intent can be ascertained from a consideration of the entire Act, its nature, its object and the consequences that would result from construing it one way or the other.” 
Fumarolo v. Chicago Board of Education
, 142 Ill. 2d 54, 96 (1990).

The relevant provisions of the Code are as follows. Section 5–2–4 (b) provides, in pertinent part:

“If the Court finds the defendant subject to involuntary admission *** the initial order for admission of a defendant acquitted of a felony by reason of insanity shall be for an indefinite period of time. Such period of commitment shall not exceed the maximum length of time that the defendant would have been required to serve, less credit for good behavior, before becoming eligible for release had he been convicted of and received the maximum sentence for the most serious crime for which he has been acquitted by reason of insanity.” 730 ILCS 5/5–2–4(b) (West 2000).

Thereafter, if the court finds that the defendant is in need of mental health services but is no longer in need of inpatient care, the court shall order the defendant released under conditions that the court deems appropriate. 730 ILCS 5/5–2–4(h) (West 2000). The section defining conditional release provides that “[s]uch conditional release shall be for a period of five years, unless the defendant, the person or facility rendering the treatment, therapy, program or outpatient care, or the State’s Attorney petitions the Court for an extension of the conditional release period for an additional three years.” 730 ILCS 5/5–2–4(a)(1)(D) (West 2000). During this period of conditional release, if the court determines that the defendant has not fulfilled his conditions of release, the court shall hold a hearing and:

“if the Court finds that the defendant is subject to involuntary admission ***, it shall enter an order remanding him or her to the Department of Human Services or other facility. If the defendant is remanded to the Department of Human Services, he or she shall be placed in a secure setting unless the Court determines that there are compelling reasons that such placement is not necessary.” 730 ILCS 5/5–2–4(i) (West 2000).

Although the statute provides for a maximum period of commitment and provides for conditional release, the statute does not address which time period prevails when an NGRI defendant’s conditional release period exceeds his 
Thiem
 date. As noted, the State contends that because Williams was conditionally released prior to his 
Thiem
 date, Williams’ 
Thiem
 date became irrelevant and Williams was now subject to a five-year period of conditional release. Williams argues that because the 
Thiem
 date is the outside limit for his period of confinement, the conditional release period cannot extend beyond his 
Thiem
 date.

On its face, section 5–2–4 of the Code can be construed in several ways. Both provisions of section 5–2–4 indicate that the time periods are mandatory. For example, section 5–2–4(b) provides that “[s]uch period of commitment 
shall not exceed
 the maximum length of time that the defendant would have been required to serve ***.” (Emphasis added.) 730 ILCS 5/5–2–4(b) (West 2000). Likewise, section 5–2–4(a)(1)(D) provides that “[s]uch conditional release 
shall be
 for a period of five years” unless an extension of the conditional release period for an additional three years is sought. (Emphasis added.) 730 ILCS 5/5–2–4(a)(1)(D) (West 2000). Consequently, the statute can be construed in the manner suggested by the State to provide that the conditional release provision supercedes the 
Thiem
 date when an NGRI defendant is released prior to his 
Thiem
 date, so that the conditional release period then sets the outside limit for the court’s jurisdiction over an NGRI defendant. The statute can also be construed in the manner suggested by Williams to provide that the 
Thiem
 date sets the outside limit for a court’s jurisdiction over a defendant, so that an NGRI defendant’s conditional release expires on the same date as the 
Thiem
 date. Moreover, in an attempt to reconcile the two provisions, the statute could be construed in a third way to provide that an NGRI defendant’s conditional release period can extend beyond his 
Thiem
 date, but the NGRI defendant cannot be recommitted for a violation of his conditional release once his 
Thiem
 date has expired. When a statute “is capable of being understood by reasonably well-informed persons in two or more different senses,” it is ambiguous. 
People v. Jameson
, 162 Ill. 2d 282, 288 (1994), citing 2A N. Singer, Sutherland on Statutory Construction §45.02 (5th ed. 1992). Where statutory language is ambiguous, courts may consider other sources to determine legislative intent. 
Jameson
, 162 Ill. 2d at 288.

When the provisions of section 5–2–4 are examined in light of the legislative history of the statute, it is evident that the legislature did not intend for the conditional release period to be used to allow a court to exercise jurisdiction over an NGRI defendant beyond the expiration of his 
Thiem
 date. The original version of section 5–2–4 provided as follows:

“(a) After a finding or verdict of not guilty by reason of insanity ***, a hearing shall be held under the Mental Health Code of 1967 to determine whether the defendant is in need of mental treatment. If the defendant is found to be in need of mental treatment the court shall enter an order so specifying.” Ill. Rev. Stat. 1977, ch. 38, par. 1005–2–4(a).

Public Act 81–1497 amended this section effective September 19, 1980. Public Act 81–1497 broadened the scope of a court’s authority over defendants found not guilty by reason of insanity. Following the amendment, section 5–2–4 provided:

“(a) After a finding or verdict of not guilty by reason of insanity ***, the defendant shall be ordered to the Department of Mental Health and Developmental Disabilities for an evaluation as to whether he is subject to involuntary admission or in need of mental health services. The order shall specify whether the evaluation shall be conducted on an inpatient or outpatient basis.

The Department shall provide the Court with a report of its evaluation within 30 days of the date of this order. The Court shall hold a hearing *** to determine if the individual is: (a) subject to involuntary admission; (b) in need of mental health services on an inpatient basis; (c) in need of mental health services on an outpatient basis; (d) a person not in need of mental health services. The Court shall enter its findings.

If the defendant is found to be subject to involuntary admission or in need of mental health services on an inpatient care basis, the court shall order the defendant to a facility of the Department of Mental Health and Developmental Disabilities. If the defendant is found to be in need of mental health services, but not on an inpatient care basis, the Court shall conditionally release the defendant, under such conditions as set forth in this Section as will reasonably assure the defendant’s satisfactory progress in treatment or rehabilitation and the safety of the defendant or others. If the Court finds the person not in need of mental health services, then the Court shall order the defendant discharged from custody.” Ill. Rev. Stat. 1981, ch. 38, par. 1005–2–4(a).

Public Act 81–1497 began as House Bill 1010. Lengthy legislative debates preceded the adoption of House Bill 1010. During the debates on House Bill 1010, Representative Katz explained the history of the bill as follows:

“I doubt if there is an issue that is brought to Legislators more often in terms of complaint of the citizenry than the instances of individuals who are found not guilty by reason of insanity 
who are released because they are not in need of mental treatment and they are released and then they go on to commit another violent crime
. *** What the Bill does is to provide that in the instance of an individual found not guilty by reason of insanity that that [
sic
] individual will be sent to the facilities of the Department of Mental Health where they will make an evaluation of the defendant. On the evaluation they may find that he can be involuntarily admitted because he is a danger to himself or others 
and that’s currently the situation. However, they can also find that the individual is in need of mental health services. If the individual is found to be in need of mental health services he is given a conditional discharge, or a conditional release by the courts and for a period then of five years he will be under the jurisdiction of the Department of Mental Health
. They may decide that he needs hospitalizing and institutionalized [
sic
] and may keep him in the hospital. They may also put him on an outpatient basis. But rather than letting the individual simply float around in the community and be unknown to everyone until he commits a violent crime or Act again, the Superintendent of the Department of Mental Health follows that individual. *** This is ... will be a great help in terms of trying to eliminate those terrible cases in which individuals who have committed violent crimes are released to go on to commit another crime.” (Emphases added.) 81st Ill. Gen. Assem., House Proceedings, May 17, 1979, at 101-02 (statements of Representative Katz).

In response to a question from Representative Van Duyne concerning the five-year conditional release period, Representative Katz explained:

“It [the five-year period] strengthens the present law. *** 
Under the present law, if the individual is brought in and he is found not in need of treatment, the Judge can release him immediately.
 This Bill broadens that concept. This Bill broadens the ... if he is in need of mental health services and so. The Department of Mental Health powers are greatly strengthened by this Bill. *** This Bill gives the Department of Mental Health the power to put an individual who is a danger to himself or to others, they can put him in involuntary admission and confine him in a State hospital to [
sic
] as long as he is such a threat. 
If he does not fall into that category, rather than releasing him as maybe the case in some instances now, if he is in need of mental health services, he is given a conditional discharge, a release for five years.
 During the five year period he is monitored. He is required to report regularly. If he does not do so, he can then be put by the Department of Mental Health into the hospital and kept there as long as they feel that he needs so.” (Emphases added.) 81st Ill. Gen. Assem., House Proceedings, May 17, 1979, at 106-07, 108-09 (statements of Representative Katz).

Likewise, in the Senate, Senator Sangmeister explained the purpose of House Bill 1010:

“Under the present law, as you know, a person if found not guilty by reason of insanity is committed to the Department of Mental Health. 
There’s an evaluation made there and the person can be, by the department, put back out in the street. There’s long been [a] feeling that we ought to do something more than that and that’s what Committee Bill 1010 does
. It sets up the fact that you still go to the Department of Mental Health, there’s an evaluation made there. Whether you are to be released, which would be very doubtful under those circumstances, whether you should need ... outpatient care or inpatient care, you’re then brought back to the court and the court has to hear that testimony and evaluation is made. From there on the ... the defendant is under the jurisdiction of that court for five years subject to whatever ... orders the court may wish to impose upon that particular defendant.” (Emphasis added.) 81st Ill. Gen. Assem., Senate Proceedings, June 27, 1979, at 340-41 (statements of Senator Sangmeister).

Senator Sangmeister subsequently explained that:

“
There are two new standards that we’re going to add. In addition to the present involuntary admission, there will be two new categories, in need of mental health services on an inpatient basis and in need of mental health services on an outpatient basis.
 These standards will apply only to persons who have been found not guilty by reason of insanity. *** 
What we’re attempting to do here in the State of Illinois with this is ... to give the courts jurisdiction over a person for a period of at least five years after he has been found not guilty by reason of insanity rather than under the present law where he is committed to the Department of Health ... Mental Health, reviewed every sixty days and then a recommendation made back to the court whether or not he should be discharged
.” (Emphases added.) 81st Ill. Gen. Assem., Senate Proceedings, June 30, 1980, at 23, 24 (statements of Senator Sangmeister).

The only discussion concerning the impact that the conditional release provision would have on a defendant’s maximum period of commitment occurred when Senator Nimrod asked:

“Senator Sangmeister, it seemed to me that the unfit to ... or not guilty by reason of insanity, that we had a provision in there that would have kept the individual under the jurisdiction of the court for the same period of time as though he had been found guilty. Have we ... have we changed that section at all? That was a bill that we passed here ... I had sponsored here a couple of years ago and I want to make sure that we’re not affecting that particular provision.” 81st Ill. Gen. Assem., Senate Proceedings, June 30, 1980, at 27-28 (statements of Senator Nimrod).

Senator Sangmeister responded, “that’s not in this bill at all, Senator Nimrod. This is a five year period from the date that that finding is entered.” 81st Ill. Gen. Assem., Senate Proceedings, June 30, 1980, at 28 (statements of Senator Sangmeister).

The State argues that the legislative history of House Bill 1010 establishes that the purpose of the conditional release statute was to protect the public by gradually integrating NGRI defendants back into society, rather than simply releasing those defendants outright on their 
Thiem
 date. We disagree. In fact, the legislative history establishes that the conditional release provision was not directed at the NGRI defendants that were involuntarily committed following their acquittal. Rather, the conditional release provision was added to address the situation where defendants were found not guilty by reason of insanity and then released because they were not in need of mental treatment or did not meet the standard for involuntary admission. Prior to the adoption of House Bill 1010, those defendants were simply released without any supervision. As the legislative history reflects, House Bill 1010 added the conditional release provision to allow the Department of Mental Health and the courts to impose conditions upon those defendants for a period of five years, and to allow the court to recommit that person if he violated the conditions of his release. Indeed, as the appellate court found, the legislature expressly stated that the conditional release provision did not affect the provision setting a maximum period of commitment. Based upon the legislative history, as well as the language of section 5–2–4, we find that the conditional release provision does not extend the trial court’s jurisdiction over an NGRI defendant beyond his 
Thiem
 date.

In so holding, we note that we have considered and rejected a third interpretation of the statute that would hold that an NGRI defendant’s conditional release period may extend beyond the expiration of his 
Thiem
 date, but that the NGRI defendant cannot be recommitted for a violation of his conditional release once his 
Thiem
 date expires. Under this third interpretation, an NGRI defendant’s 
Thiem
 date sets the maximum period of confinement, but is not jurisdictional. The problem with the third interpretation of the statute, however, is that it would render section 5–2–4(i) of the Code superfluous. Section 5–2–4(i) provides that if an NGRI defendant on conditional release has not fulfilled the conditions of his release, the trial court shall hold a hearing and, if the trial court finds that the NGRI defendant is subject to involuntary admission or in need of mental health services on an inpatient basis, “it shall enter an order remanding him or her to the Department of Human Services.” 730 ILCS 5/5–2–4(i) (West 2000). If this court holds that an NGRI defendant’s conditional release period can extend beyond his 
Thiem
 date but that the NGRI defendant cannot be remanded to the DHS following the expiration of his 
Thiem
 date, the trial court has no recourse if the NGRI defendant violates his conditional release and is found to be subject to involuntary admission or in need of mental health services on an inpatient basis after his 
Thiem
 date expires. Because each word, clause and sentence of a statute must be given reasonable meaning and should not be rendered superfluous (
Cryns
, 203 Ill. 2d at 280), we find that the correct interpretation of section 5–2–4 of the Code is to find that an NGRI defendant’s 
Thiem
 date sets the outside limit of this court’s jurisdiction over that defendant.

The State further argues, however, that the legislature’s recent amendment to section 5–2–4 establishes that under the prior version of the statute, which is at issue in this case, an NGRI defendant’s conditional release could extend beyond his 
Thiem
 date. Public Act 93–78, effective January 1, 2004, amends section 5–2–4(a)(1)(D) to provide that in addition to the initial five year period of conditional release, “[a]dditional 5-year periods of conditional release may be ordered following a hearing as provided in this Section.” Pub. Act 93–78, eff. January 1, 2004 (amending 730 ILCS 5/5–2–4(a)(1)(D) (West 2002)). Public Act 93–78 further provides, however, that “in no event shall the defendant’s period of conditional release continue beyond the maximum period of commitment ordered by the court pursuant to paragraph (b) of this Section.” Pub. Act 93–78, eff. January 1, 2004. The State argues that the amendment to section 5–2–4 demonstrates that under the previous statute a defendant’s conditional release could extend past his 
Thiem
 date, because when the legislature amends a statute, it is presumed that the legislature intended to effect a change in the law.

While it is true that a material change in a statute made by an amendatory act is presumed to change the original statute, the circumstances surrounding the enactment of an amendment must be considered. 
O’Connor v. A&P Enterprises
, 81 Ill. 2d 260, 271 (1980). “An amendment of an unambiguous statute indicates a purpose to change the law, while no such purpose is indicated by the mere fact of an amendment of an ambiguous provision.” 
O’Connor
, 81 Ill. 2d at 271, citing 1A Sutherland, Statutes & Statutory Construction §22.30, at 179 (1972). Here, the portion of the statute amended by Public Act 93–78 was ambiguous. In any event, the amendment changes the law with regard to the length of the conditional release period. That the amended statute now expressly references an NGRI defendant’s 
Thiem
 date is merely incidental to the change in the law and not the reason for the change. Consequently, we reject the State’s argument that the recent amendment to section 5–2–4 establishes that under the current version of the statute, an NGRI defendant’s conditional release period is not limited by his 
Thiem
 date.

Finally, the State argues that it was inappropriate for the appellate court to remand the cause with directions to appoint the Cook County public guardian for Williams to ascertain whether civil commitment proceedings should be commenced. The State claims that this order is inappropriate because Williams already has 
pro bono
 counsel and because this is not the type of case in which the Cook County public guardian is authorized to act. As Williams notes, however, the appellate court directed the trial court to appoint the public guardian to determine whether it was appropriate to initiate civil commitment proceedings against Williams, not to represent Williams at those proceedings.

Nonetheless, we do find it unnecessary at this time to remand the case with directions to appoint the Cook County public guardian. Section 1–119 of the Mental Health Code provides for civil involuntary admission of a person with a mental illness “who because of his or her illness is reasonably expected to inflict serious physical harm upon himself or herself or another in the near future” or “who because of his or her illness is unable to provide for his or her basic physical needs so as to guard himself or herself from serious harm.” 405 ILCS 5/1–119(1), (2) (West 2000). The Mental Health Code provides that the “State’s Attorneys of the several counties shall represent the people of the State of Illinois in court proceedings under this Chapter” and “shall ensure that petitions, reports and orders are properly prepared.” 405 ILCS 5/3–101 (West 2000). Pursuant to statute, then, the Cook County State’s Attorney is the proper party to initiate civil commitment proceedings against Williams. To date, the Cook County State’s Attorney has not initiated civil commitment proceedings against Williams, nor has he indicated that he intends to do so. While the State’s Attorney certainly can seek Williams’ civil commitment, we find that it is premature to remand this cause for a determination of whether civil commitment procedures should be commenced absent any indication from the State that it believes civil commitment is necessary at this time. Consequently, we vacate that portion of the appellate court’s order remanding the cause to the circuit court with directions to appoint the Cook County public guardian for the purpose of ascertaining whether civil commitment procedures should be commenced.

For all the foregoing reasons, we affirm the appellate court’s order reversing the circuit court’s denial of Williams’ petition for writ of 
habeas corpus
 and reversing the circuit court’s order remanding Williams to the custody of the DHS. We vacate that portion of the appellate court’s order remanding the cause to the circuit court for the appointment of the public guardian. We find that Williams is entitled to his immediate release unless his civil commitment is sought.

Appellate court judgment affirmed

in part and vacated in part;

circuit court reversed.

FOOTNOTES
1:     
1
At oral argument, the State, on behalf of Nancy Staples, hospital administrator of the Elgin Mental Health Center, stated that Williams was remanded to the DHS and received inpatient treatment for approximately one year, until December 16, 2002. Williams then was placed on conditional release again. Williams currently resides at the Rainbow Beach Nursing Center and receives outpatient treatment.

2:     
2
At the hearing on Williams’ petition for writ of 
habeas corpus
, Williams’ attorney stated that Nancy Staples was no longer the administrator of the Elgin Mental Health Center and that he wished to amend the record. All the filings in the appellate court and in this court, however, continue to reference Nancy Staples.