# Illinois Official Reports

## Appellate Court

---

*Service Employees International Union, Local 73 v. Illinois Labor Relations Board, State Panel*, **2017 IL App (4th) 160347**

---

| | |
|---|---|
| Appellate Court Caption | SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 73, Petitioner, v. THE ILLINOIS LABOR RELATIONS BOARD, STATE PANEL; and THE ILLINOIS SECRETARY OF STATE, Respondents. |
| District & No. | Fourth District<br>Docket Nos. 4-16-0347, 4-16-0372 cons. |
| Filed<br>Modified upon denial<br>of rehearing | June 27, 2017<br><br>July 31, 2017 |
| Decision Under Review | Petition for review of order of Illinois Labor Relations Board, State Panel, Nos. S-UC-12-034, S-UC-14-006. |
| Judgment | Confirmed. |
| Counsel on Appeal | Tyson B. Roan, of Service Employees International Union, Local 73, of Chicago, for petitioner.<br><br>Lisa Madigan, Attorney General (David L. Franklin, Solicitor General, and Sharon A. Purcell, Assistant Attorney General, of counsel), and Kathryn M. Zeledon Nelson, General Counsel, of Illinois Labor Relations Board, both of Chicago, for respondent Illinois Labor Relations Board, State Panel. |

Laner, Muchin, Dombrow, Becker, Levin & Tominberg, of Chicago (Mark W. Bennett, Joseph M. Gagliardo, Lawrence J. Weiner, and Sara P. Yager, Special Assistant Attorneys General, of counsel), for other respondent.

Panel          JUSTICE POPE delivered the judgment of the court, with opinion. Presiding Justice Turner and Justice Knecht concurred in the judgment and opinion.

## OPINION

¶ 1     Pursuant to Illinois Supreme Court Rule 335 (eff. Feb. 1, 1994) and section 9(i) of the Illinois Public Labor Relations Act (Labor Act) (5 ILCS 315/9(i) (West 2012)), petitioner, Service Employees International Union, Local 73 (Union), seeks direct review of a decision of respondent, the Illinois Labor Relations Board, State Panel (Board), finding employees under the jurisdiction of respondent, the Illinois Secretary of State (Secretary), titled Executive I, Executive II, Drivers Facility Manager I (DFM I), and Drivers Facility Manager II (DFM II), were not public employees within the meaning of section 3(n) of the Labor Act (5 ILCS 315/3(n) (West 2012)).

¶ 2     On review, the Union (1) challenges the Board's interpretation of section 3(n) of the Labor Act (5 ILCS 315/3(n) (West 2012)) and (2) argues the Executive I, Executive II, DFM I, and DFM II positions did not meet the requirements for exclusion under section 3(n) of the Labor Act. We confirm.

¶ 3                            I. BACKGROUND
¶ 4                         A. Procedural History
¶ 5     On February 7, 2012, the Union filed a unit clarification petition with the Board, seeking to have the Board include all unrepresented Executive I and Executive II titled employees of the Secretary in an existing collective bargaining unit. On July 26, 2012, the Board granted the Union's petition. *Service Employees International Union, Local 73 & Illinois Secretary of State*, 29 PERI ¶ 28 (ILRB State Panel 2012). On August 28, 2012, the Secretary filed a petition for direct administrative review of the Board's decision with this court. While the appeal was pending, the legislature amended the Labor Act, excluding from the definition of "public employee" or "employee," for purposes of the Labor Act, "a person who is a State employee under the jurisdiction of the Secretary of State who holds the position classification of Executive I or higher, whose position authorizes, either directly or indirectly, meaningful input into government decision-making on issues where there is room for principled disagreement on goals or their implementation, or who is otherwise exempt under the Secretary of State Merit Employment Code." 5 ILCS 315/3(n) (West 2012). Accordingly, this court remanded the case to the Board with directions to enter an order vacating the prior decision and order, revoke the prior certification, and conduct further proceedings applying the

standards and definitions set forth in the amendment. *Illinois Secretary of State v. Illinois Labor Relations Board, State Panel*, No. 4-12-0796 (May 7, 2013) (unpublished summary order under Supreme Court Rule 23(c)).

¶ 6 On August 15, 2013, the Secretary filed a unit clarification petition with the Board, seeking to have it clarify whether employees titled Executive I, Executive II, DFM I, and DFM II, under the jurisdiction of the Secretary, were no longer public employees within the meaning of the Labor Act and should be excluded from collective bargaining and the bargaining units at issue as of the effective date of the amendment, April 5, 2013.

¶ 7 By agreement of the parties, the Board entered an order consolidating the cases filed by the Union and the Secretary. Following multiple preliminary hearings and attempted mediation of the consolidated cases, the administrative law judge (ALJ) entered an order on June 25, 2014, limiting the scope of the anticipated July 29, 2014, hearing on the petitions. First, she found the Executive I and II titled employees were no longer "public employee[s]" for purposes of the Labor Act following the amendment on April 5, 2013, and thus, there was "no question of law or fact necessitating a hearing regarding the propriety of the unit clarification petition with respect to the Executives I and II." She then limited the scope of the July hearing to the issue of "whether the DFMs I and II meet one of the three criteria under the amended definition in 3(n) such that they are no longer public employees."

¶ 8                                B. DFM I and DFM II

¶ 9 According to the "Office of the Secretary of State, Department of Personnel, Position Description," the "Complete, Current and Accurate Statement of Position Duties and Responsibilities" for the position titled DFM I are as follows:

> "Under direction of the Regional Manager, plans, supervises, coordinates and evaluates the activities of facility staff engaged in providing service to the public in a small to medium Downstate Driver Services Field Facility; responsible for the accounting, auditing and depositing of all monies collected; administers road and/or written examinations; performs cashier functions; reviews and completes motor vehicle title and registration applications; attends meetings; prepares and submits reports; monitors the maintenance and cleanliness of facility. Requires valid Illinois Drivers License, ability to lift/carry 0-25 lbs. and travel to other facilities and/or mobile locations to perform assigned duties.
>
>     1. Plans, supervises coordinates and evaluates staff involved in a variety of activities associated with a Driver Services Field Facility, including all drivers license/identification card and motor vehicle services assigned to the facility; supervises staff activities relating to all aspects of facility operations including, but not limited to, coordinating all staff activities relating to processing applicants, facilitates and expedites processing of applicants, closely monitors staff engaged in processing and testing applicants to ensure adherence to Secretary of State policies, including uniformity and consistency of instructions given to applicants, etc.; determines work schedules and priorities; approves and/or denies time-off; assigns and/or denies overtime and travel assignments; handles special problems and answers questions concerning staff functions; provides, arranges for and/or supervises the training of employees as directed or needed; administers progressive discipline; participates in resolution of grievances; handles employee complaints.

2. Maintains responsibility for accounting, auditing and depositing all monies collected by the facility.

3. Administer road examinations to applicants for all classes of driver's licenses; administers and grades written drivers examinations; performs cashier functions for driver's license fees; reviews and completes motor vehicle title and registrations applications.

4. Prepares and submits reports relative to facility operations to supervisor including, but not limited to, weekly, monthly and periodic reports such as the Consumables Inventory & Order Report, the Monthly Road Test Report, the Monthly Motor Vehicle Title & Registration Report, Accident/Incident Reports & Statements, etc.

5. Attends meetings and/or training sessions; responsible for monitoring the maintenance and cleanliness of the facility, as well as general appearance.

6. Performs other duties as assigned."

The position duties and responsibilities for the position titled DFM II are identical, except the DFM II works under the direction of the regional manager *and* "through subordinate supervisory staff." In addition, the DFM II is not restricted to work in a small to medium downstate driver services field facility. The DFM II may provide services in any downstate facility.

¶ 10                                 C. The Hearing

¶ 11    On July 29, 2014, the ALJ commenced the hearing on the consolidated cases. The following is a brief summary of the relevant evidence since the parties are familiar with the facts of this case.

¶ 12                          1. *Stephen Roth's Testimony*

¶ 13    At the July 29, 2014, evidentiary hearing on the consolidated petitions, Stephen Roth testified he is the director of personnel for the Secretary. The Secretary employs 3700 individuals in 23 departments. The 23 departments include Drivers Services Metro and Drivers Services Downstate. The Executive I and Executive II titled positions are found in the Drivers Services Metro department (Chicago and the collar counties) and the DFM I and DFM II titled positions are found in the Drivers Services Downstate department. The titles serve only to distinguish between those individuals managing facilities in the Chicago area and those individuals managing facilities in the downstate area. Their duties and responsibilities are the same. According to Roth, the "functionality of the job" and the classification of the Executive I, Executive II, DFM I, and DFM II are the same. The Executive I and DFM I titled positions receive the same compensation, and the Executive II and DFM II titled positions also receive the same compensation.

¶ 14    Roth confirmed "[t]he DFM title is usually associated with someone who is the top person at a driver's facility." The various individuals who report to the DFM are generally titled public service representative and public service clerk.

## 2. *Michael Mayer's Testimony*

Michael Mayer testified he is the director of the Drivers Services Downstate department. Mayer oversees approximately 86 downstate drivers services facilities. The DFM is the highest ranking employee at each of the facilities. The facilities are divided into 10 regions. DFMs report to 1 of 10 regional managers, and the regional managers presently report to Mayer. (In the past, regional managers reported to an administrator in the Field Service Bureau, who reported to Mayer, but according to Mayer, the position has been vacant for several years.) Mayer reports to the chief of staff and Secretary.

Mayer testified the difference between the DFM I and DFM II titled positions reflects the size of the facility and volume of work. Generally, a facility operating under the management of a DFM I employs six to nine individuals and a facility operating under the management of a DFM II employs more than nine individuals.

According to Mayer, the DFM is the "captain of the ship *** in charge of [the] operation," with complete oversight of his employees. Specifically, he testified the DFM is responsible for employee training, employee discipline, employee adherence to "the proper procedures and policies," and implementation and maintenance of uniform policies. Mayer testified the DFM is encouraged to contribute to the development of drivers facilities procedures "to make us the best we can be" and exercises discretion when accommodating the requests of those individuals in need of drivers facilities services. Additionally, the DFM performs accounting functions for the facility, reconciles cash receipts with daily transactions, and maintains records and statistics for the facility. The DFM also handles special problems concerning applicants for the various services offered by the facility and may alter the physical layout of the facility to promote greater efficiency.

Mayer testified a DFM has complete discretion to grant overtime, if necessary, to accommodate a customer or customers' needs. With regard to employee discipline, the DFM may engage in oral counseling with an employee, complete a written warning if necessary, and initiate formal disciplinary action. Mayer testified the DFMs "have full reign as to what takes place in that facility *** they are in charge of that facility."

Mayer characterized a 3000 page facilities operation manual as a "tool" to assist in all aspects of facility operation and the "red book" as a reference manual for emergency situations. He emphasized all DFMs work alongside their public service representatives during the course of their day. Mayer explained, "they need to stay involved to where they understand the process." Even Mayer will "jump on a counter and work on the counter" when in the drivers facilities. The amount of time a DFM spends working at the counter varies depending on the facility, customer needs, and staffing. They may help with lunch hours and breaks but spend approximately 95% of their day "doing their paperwork and getting things resolved."

## 3. *Jay Morgan's Testimony*

Jay Morgan testified he has worked as a DFM I in Vienna, Illinois, for 17 years. He also serves as chief steward for the Union. Morgan described his "major duties" as follows:

> "I oversee the daily operations as far as the reconciling the monies, depositing the monies from Driver Services, Vehicles, stickers, do daily reports, reporting of Drivers work, Vehicles work, cash receipts."

He reported working alongside the public service representatives approximately 75% of his time and completing reports approximately 25% of his time. His facility employs three individuals in addition to Morgan.

¶ 23 Morgan testified he had provided an employee "oral counseling" on four occasions in his 17-year career as a DFM I. On each occasion, he was advised to do so by his regional manager. He did not believe it was appropriate to provide an employee oral counseling without a directive from his regional manager. Morgan recalled two occasions where an employee was formally disciplined. Although he reported the conduct, he did not participate in determining the appropriate consequences. He was told by an administrator in 1998 he did not have authority to "pass out discipline." Morgan testified he grants overtime only when a customer comes into the facility at the last minute. He was told by his regional manager overtime must be preapproved.

¶ 24                                    4. *Lora Wolters's Testimony*

¶ 25 Lora Wolters testified she has worked as a regional manager for Drivers Services Downstate for 15 years. Wolters manages region I, which includes Anna, Belleville, Cairo, Carbondale, Marion, Metropolis, Nashville, Pinckneyville, Sparta, Vienna (Morgan's drivers services facility), and Mobile 299. Wolters identified multiple occasions where a DFM could authorize overtime without preapproval. She does ask the DFM to notify her of the overtime "at the 15 minute mark," just so she is not surprised when she receives the overtime report.

¶ 26                                    D. ALJ and Board Decisions

¶ 27 On December 30, 2015, the ALJ issued her recommended decision and order, concluding Executive I, Executive II, DFM I, and DFM II titled employees were not public employees within the meaning of section 3(n) of the Labor Act and thus not eligible for inclusion in a collective bargaining unit. (The order is 34 pages long and includes comprehensive findings of fact and a detailed legal analysis.) The ALJ found section 3(n) provided three exclusions to the definition of "public employee" or "employee" for purposes of the Labor Act. She enumerated the three exclusions as follows:

> "Under the applicable provision, 'a person who is a State employee under the jurisdiction of the Secretary of State' is excluded from the definition of 'public employe[e]' if he meets one of the following:
>
>> (1) who holds the position classification of Executive I or higher;
>
>> (2) whose position authorizes either directly or indirectly, meaningful input into government decision-making on issues where there is room for principled disagreement on goals or their implementation; or
>
>> (3) who is otherwise exempt under the Secretary of State Merit Employment Code."

¶ 28 With regard to the Executive I and Executive II titled positions, the ALJ found the language of the statute clear, noting the Labor Act excludes from the definition of public employee "a person who is a State employee under the jurisdiction of the Secretary of State who holds the position classification of Executive I or higher." 5 ILCS 315/3(n) (West 2012). Thus, the ALJ found the Executive I and Executive II titled employees were not public employees for purposes of the Labor Act.

¶ 29 With regard to the DFM I and DFM II titled positions, the ALJ rejected the Secretary's first argument the DFMs are not public employees within the meaning of section 3(n) of the Labor Act because they perform "nearly identical duties" as an "Executive I or higher." The ALJ reasoned the legislature could have included language referencing employees who exercise substantially similar duties as an Executive I or higher, but it did not. DFMs did not hold the position classification of Executive I or higher.

¶ 30 However, the Secretary argued, in the alternative, the DFM positions authorize, either directly or indirectly, meaningful input into government decision-making on issues where there is room for principled disagreement on goals or their implementation, and thus, based on the second exclusion, they are not public employees within the meaning of section 3(n) of the Labor Act. The ALJ agreed, finding "room for principled disagreement in the decisions reached by the DFMs and their supervisors," and further, "[t]he DFMs authorize meaningful direct or indirect input into the decision-making process." The ALJ noted, "[n]o manual, no matter how extensive, can anticipate every situation a drivers facility may face." Specifically, she found the DFMs "empowered to rearrange the schedule of intermittent employees, assign overtime, or seek additional staff in order to accommodate the influx of customers." According to the ALJ, these "discretionary decisions *** leave ample room for principled disagreement." She noted further, the DFM is the only individual authorized to exercise discretion when an individual lacks the required documentation for a service offered by the facility. In addition, the DFM may authorize (without preapproval) overtime in a variety of circumstances, choose appropriate disciplinary measures, and is responsible for "addressing attendance issues, identifying performance deficiencies, and optimizing staff talents," all of which require the DFM to exercise discretion. The ALJ also found the record showed the Secretary "not only authorizes the DFMs to have direct input in the decision-making process, but specifically seeks it out." The ALJ concluded Executive I, Executive II, DFM I, and DFM II titled employees were not public employees within the meaning of the Labor Act.

¶ 31 On January 14, 2016, the Union filed its exceptions to the ALJ's recommended decision and order. On January 25, 2016, the Secretary filed its exceptions and brief in response to the Union's exceptions and in support of its cross-exceptions. On January 29, 2016, the Union filed its response to the Secretary's cross-exceptions.

¶ 32 Following argument on February 9, 2016, the Board upheld the ALJ's recommended decision and order. The Board then directed the issuance of a certification excluding Executive I, Executive II, DFM I, and DFM II titled positions from the collective bargaining unit.

¶ 33 This direct appeal followed.

## II. ANALYSIS

### A. Standard of Review

¶ 36 Our review of the Board's decision is governed by the Administrative Review Law (735 ILCS 5/3-101 to 3-113 (West 2012)). *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577, 839 N.E.2d 479, 485 (2005). According to section 3-110 of the Administrative Review Law, our "hearing and determination shall extend to all questions of law and fact presented by the entire record." 735 ILCS 5/3-110 (West 2012).

¶ 37    This court may apply three standards of review when reviewing the Board's decision, depending on the nature of the question we are considering. If the question is one purely of fact, we deem the Board's findings and conclusions to be "prima facie true and correct" (735 ILCS 5/3-110 (West 2012)), and we will overturn such findings only if they are against the manifest weight of the evidence. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210, 886 N.E.2d 1011, 1018 (2008). A factual determination is against the manifest weight of the evidence if the opposite conclusion is clearly evident or if the finding is unreasonable, arbitrary, or not based on evidence. *Cinkus*, 228 Ill. 2d at 210, 886 N.E.2d at 1018.

¶ 38    If, however, the question is one purely of law, we give the Board no deference unless it resolved a genuine ambiguity in a statute or regulation it was charged with administering. See *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 362 Ill. App. 3d 652, 656, 840 N.E.2d 704, 708 (2005). We decide legal questions *de novo*. *Department of Central Management Services/The Department of Public Health v. Illinois Labor Relations Board, State Panel*, 2012 IL App (4th) 110013, ¶¶ 50-51, 979 N.E.2d 603.

¶ 39    We review mixed questions of fact and law by asking whether the agency's decision is clearly erroneous. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 392, 763 N.E.2d 272, 280 (2001). A finding is clearly erroneous if, despite the existence of some evidence to support the finding, the evidence in its entirety leaves the reviewing court with the definite and firm conviction the finding is a mistake. *AFM*, 198 Ill. 2d at 393, 763 N.E.2d at 280-81.

¶ 40    Here, the Union first challenges the Board's interpretation of section 3(n) of the Labor Act, a legal question we review *de novo*. In its second argument, the Union contends the Board erred in its application of the facts to the law. As the Union's second argument raises a mixed question of fact and law, we apply a clearly erroneous standard of review.

¶ 41                    B. Section 3(n) of the Labor Act

¶ 42    The first issue raised by the Union is one of statutory interpretation. Our primary objective is to ascertain and give effect to the intent of the legislature. *Harrisonville Telephone Co. v. Illinois Commerce Comm'n*, 212 Ill. 2d 237, 251, 817 N.E.2d 479, 488 (2004). The most reliable indicator of such intent is the language of the statute, which is to be given its plain and ordinary meaning. *Harrisonville Telephone Co.*, 212 Ill. 2d at 251, 817 N.E.2d at 488. Words and phrases should not be considered in isolation; rather, they must be interpreted in light of other relevant provisions and the statute as a whole. *Williams v. Staples*, 208 Ill. 2d 480, 487, 804 N.E.2d 489, 493 (2004). In addition to the statutory language, the court may consider the purpose behind the law and the evils sought to be remedied, as well as what consequences might result from construing the law one way or the other. *Williams*, 208 Ill. 2d at 487, 804 N.E.2d at 493.

¶ 43    Section 3(n) states the following, in relevant part:

    " 'Public employee' or 'employee', for the purposes of this Act, means any individual employed by a public employer, *** but excluding *** a person who is a State employee under the jurisdiction of the Secretary of State who holds the position classification of Executive I or higher, whose position authorizes, either directly or indirectly, meaningful input into government decision-making on issues where there is room for principled disagreement on goals or their implementation, or who is otherwise

- 8 -

exempt under the Secretary of State Merit Employment Code ***." 5 ILCS 315/3(n) (West 2012).

Employees excluded from the definition of "public employee" under section 3(n) of the Labor Act may not engage in collective bargaining. See 5 ILCS 315/6(a) (West 2012).

¶ 44    The Union argues this portion of section 3(n) contains two different ways in which an individual employed by the Secretary is excluded from the definition of "public employee." It contends an employee must first "hold the position of Executive I or higher" *and* meet one of the two following phrases joined by the "or." The Board interprets the relevant portion of section 3(n) as containing a list of three circumstances in which an employee is excluded from the definition of "public employee," with each of the three phrases beginning with the relative pronoun "who" or "whose," and each phrase separated by a comma. We agree with the Board and note the language is not ambiguous, so we have not looked to legislative history in reaching our conclusion. Under the plain language of section 3(n), and by properly treating the initial language as an independent clause (" 'Public employee' or 'employee', for purposes of this Act, means any individual employed by a public employer *** but excluding *** a person who is a State employee under the jurisdiction of the Secretary of State") and the three following clauses as dependent clauses, an employee is excluded (1) "*who* holds the position classification of Executive I or higher, [(2)] *whose* position authorizes, either directly or indirectly, meaningful input into government decision-making on issues where there is room for principled disagreement on goals or their implementation, *or* [(3)] *who* is otherwise exempt under the Secretary of State Merit Employment Code." (Emphases added.) 5 ILCS 315/3(n) (West 2012). Moreover, unlike the Union's interpretation, our interpretation does not require this court to insert an additional conjunction between the first and second dependent clauses or add numerals and additional punctuation affecting the scope and operation of the statute.

¶ 45    The Union also asserts we should interpret the second means of exclusion ("whose position authorizes, either directly or indirectly, meaningful input into government decision-making on issues where there is room for principled disagreement on goals or their implementation" (5 ILCS 315/3(n) (West 2012))) the same as in patronage cases. The Union notes the language of the "policymaking exception" in section 3(n) of the Labor Act (5 ILCS 315/3(n) (West 2012)) is the same language used by the Seventh Circuit in *Nekolny v. Painter*, 653 F.2d 1164, 1169 (7th Cir. 1981).

¶ 46    In *Nekolny*, the Seventh Circuit established a functional test to determine whether the State may constitutionally make party affiliation an appropriate employment consideration. The issue was whether the power inherent in any given office or position authorizes a person in the position to provide, "either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation." *Nekolny*, 653 F.2d at 1170. The instant legislation does not concern political patronage and the "policymaker exception" to the first amendment's protection of public employees. Instead, section 3(n) identifies positions excluded from the definition of "public employee," including those individuals employed by the Secretary in a "policymaking" position. 5 ILCS 315/3(n) (West 2012). If the legislature intended the aforementioned language to mean "*Nekolny* exception" (or as more commonly stated, "Rutan-exempt"), as applied in political patronage cases, it could have stated "*Nekolny* exception" or "Rutan-exempt." It did not, and we decline to revise the legislature's language to read as such.

¶ 47    We note the language immediately following the exclusionary language at issue in this case identifies as excluded from the definition of "public employee" those "employees in the Office of the Secretary of State who are completely exempt from jurisdiction B of the Secretary of State Merit Employment Code *and who are in Rutan-exempt positions* on or after [April 5, 2013 (the effective date of Public Act 97-1172)]." (Emphasis added.) 5 ILCS 315/3(n) (West 2012). Our reading of the statute is consistent with our supreme court's statement, " '[w]hen the legislature uses certain language in one part of a statute and different language in another, we may assume different meanings were intended.' " *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 56, 984 N.E.2d 449 (quoting *People v. Hudson*, 228 Ill. 2d 181, 193, 886 N.E.2d 964, 972 (2008)).

¶ 48                              C. The Positions at Issue
¶ 49                              1. *Executive I and Executive II*
¶ 50    Nothing in the language of the exclusion, "a person who is a State employee under the jurisdiction of the Secretary of State who holds the position classification of Executive I or higher" (5 ILCS 315/3(n) (West 2012)), requires a factual determination. The exclusion from the definition of "public employee" is expressly dependent upon a position under the jurisdiction of the Secretary being titled Executive I or higher. To hold otherwise would be contrary to the clear wording of the statute. Given the plain and ordinary meaning of section 3(n), the Board did not err in finding an individual employed by the Secretary in positions titled Executive I and Executive II was excluded from the definition of "public employee." See 5 ILCS 315/3(n) (West 2012).

¶ 51                              2. *DFM I and DFM II*
¶ 52    In finding the DFM I and DFM II titled positions authorize, either directly or indirectly, meaningful input into government decision-making on issues where there is room for principled disagreement on goals or their implementation, the Board noted a broad scope of job duties and responsibilities associated with the position of DFM.

¶ 53    The phrase "whose position authorizes, either directly or indirectly, meaningful input into government decision-making on issues where there is room for principled disagreement on goals or their implementation" is not defined by section 3(n) of the Labor Act (5 ILCS 315/3(n) (West 2012)), nor any other relevant statute. Because the phrase is not defined, " 'we must assume that the legislature intended the term to have its ordinary and popularly understood meaning.' " *People v. Beachem*, 229 Ill. 2d 237, 244, 890 N.E.2d 515, 520 (2008) (quoting *People v. Maggette*, 195 Ill. 2d 336, 349, 747 N.E.2d 339, 349 (2001)). The legislative history of section 3(n) provides insight into its purpose to foster efficiency in state government where previously "everybody who works in State Government is a member of the collective bargaining unit and there is nobody in charge." 97th Ill. Gen. Assem., House Proceedings, May 31, 2011, at 297 (statements of Representative Currie). A sponsor characterized the individuals to be excluded from the definition of "public employee" as "policy people" and "management." 97th Ill. Gen. Assem., House Proceedings, May 31, 2011, at 305 (statements of Representative Currie and Representative Franks). She noted the proposed amendments were an "effort to make sure that management people, management supervisory people in Illinois State Government *** are, in fact, able to serve as managers and not be members of

collective bargaining units." 97th Ill. Gen. Assem., House Proceedings, May 31, 2011, at 296 (statements of Representative Currie).

¶ 54    We note the Board examined, and the parties on appeal all have looked to, federal cases interpreting the "policymaking exception" to the first amendment's protection of public employees from politically motivated dismissals. See *Nekolny*, 653 F.2d at 1169-70. As the Board found, although these cases may provide some guidance, they are not determinative of the issues here.

¶ 55    This case does not involve violations of first amendment freedoms of political belief and association. Rather, section 3(n) identifies positions excluded from the definition of "public employee," including those individuals employed by the Secretary in a "policymaking" position. See 5 ILCS 315/3(n) (West 2012). The test to determine whether an individual employed by the Secretary should be excluded from the definition of "public employee" is whether the position "authorizes, either directly or indirectly, meaningful input into government decision-making on issues where there is room for principled disagreement on goals or their implementation." 5 ILCS 315/3(n) (West 2012). The facts concerning the responsibilities of the DFM I and DFM II positions are clear and indicate the positions are the very type the legislature intended to exclude from the definition of "public employee."

¶ 56    Specifically, Mayer testified the DFM is the highest ranking employee at each of the drivers services facilities and has complete oversight of his or her employees. According to Mayer, the DFM is responsible for employee training, employee discipline, employee adherence to procedures and policies, and implementation and maintenance of uniform policies. The DFM is encouraged to contribute to the development of drivers facilities procedures and exercise discretion when accommodating the requests of those individuals in need of drivers facilities services. The DFM also handles special problems concerning applicants for the various services offered by the facility and may alter the physical layout of the facility to promote greater efficiency. Mayer testified the DFMs "have full reign as to what takes place in that facility *** they are in charge of that facility."

¶ 57    Substantial evidence presented by both parties demonstrated the DFM exercises considerable independence and responsibility and has been provided the authority to impose the final decision as to a settled course of action to be followed within his or her facility.

¶ 58    Accordingly, we find the Board's determination the DFM I and DFM II positions authorize, either directly or indirectly, meaningful input into government decision-making on issues where there is room for principled disagreement on goals or their implementation, was not clearly erroneous.

¶ 59    Because our review of the entirety of the record does not leave us with a definite and firm conviction a mistake has been committed, we find the Board properly certified the positions at issue as excluded from collective bargaining under section 3(n) of the Labor Act.

¶ 60                              D. Constitutionality of Section 3(n)

¶ 61    In its final argument, the Union challenges the Board's interpretation of section 3(n) as special legislation (Ill. Const. 1970, art. IV, § 13) or as violative of equal protection (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2). Specifically, defendant argues "it is arbitrary, illogical, and unconstitutional to automatically deny Executives bargaining rights as a result of their title alone while affording greater rights and protections to DFMs where the only

difference between the two positions turns on where the person holding the position is geographically located."

¶ 62    On July 25, 2017, the Union filed a petition for rehearing in our court, and we have examined the petition. The Union admits "constitutional issues not raised before an administrative agency are waived." See *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 396-97, 776 N.E.2d 166, 192 (2002). The Union provides citations, for the first time, to the record where the Union "raised" the preceding constitutional arguments. Waiver aside, the Union's constitutional arguments fail. This court has found the Board did not err in finding individuals employed by the Secretary in positions titled Executive I and Executive II, throughout the State, were excluded from the definition of public employee. Similarly, we have found the Board did not err in finding individuals employed by the Secretary in positions titled DFM I and DFM II, throughout the State, were excluded from the definition of public employee. Accordingly, we find the Union has not met its burden of establishing the statute is unconstitutional.

¶ 63                    III. CONCLUSION
¶ 64    For the reasons stated, we confirm the Board's decision.

¶ 65    Confirmed.